

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2003

# Brown v. Phila Housing Auth

Precedential or Non-Precedential: Precedential

Docket No. 03-1061

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Brown v. Phila Housing Auth" (2003). *2003 Decisions.* Paper 77.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/77

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed November 19, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-1061

ERNEST and EUNICE BROWN; and their child, EARNEST
LAMAR; ROBERTA DOYLE, and her children; SANDRA-
DENNIS; JOANNE; JIMMY; and MYRA, on behalf of
themselves and all others similarly situated

v.

PHILADELPHIA HOUSING AUTHORITY; GILBERT STEIN,
sued individually and in his official capacity as Executive
Director, Philadelphia Housing Authority; WILLIAM L.
RAFSKY, sued individually and in his official capacity as
Acting Chairman, Board of Directors, Philadelphia
Housing Authority; MITCHELL SMITH, JR., sued
individually and in his official capacity as Housing
Manager, Richard Allen Homes; KENNETH BLACKMUN,
sued individually and in his official capacity as Assistant
Housing Manager, Richard Allen Homes; EDWARD A.
GREEN, sued individually and in his official capacity as
Landlord and Tenant Officer.

Philadelphia Housing Authority,

*Appellant.*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No. 72-2803
District Judge: Honorable Marvin Katz

Argued October 2, 2003

Before: ALITO, WEIS, and GARTH, *Circuit Judges*

(Opinion Filed: November 19, 2003)

Alan C. Kessler
Susan J. French (Argued)
Virginia Lynn Hogben
Wolf, Block, Schorr & Solis-
 Cohen LLP
1650 Arch Street, 22nd Floor
Philadelphia, Pennsylvania
 19103-2097

　Attorneys for Appellant,
　Philadelphia Housing Authority

Paul A. Brooks (Argued)
George Gould
Michael Donahue
Community Legal Services, Inc.
1424 Chestnut Street
Philadelphia, Pennsylvania 19102

　Attorneys for Appellee

## OPINION OF THE COURT

GARTH, *Circuit Judge*:

This appeal presents us with the question: should a Consent Decree entered in 1974 be vacated (1) where statutes and regulations have been enacted and promulgated curing the alleged due process deficiencies addressed by the Consent Decree, and (2) where no originally named plaintiff remains a party to the Complaint and Consent Decree and no class was ever certified?

In this action brought by appellant Philadelphia Housing Authority and others (collectively "PHA") to vacate the June 14, 1974 Consent Decree, appellees Ernest and Eunice Brown and others (hereinafter "the Browns") argue through their counsel that a class was certified "by implication" when the Consent Decree was entered. They claim that there were subsequent modifications to that Decree and no objections were raised by PHA during any of the intervening years. The Browns contend that PHA always treated the

action as a *de facto* class action. They therefore argue that PHA has waived any mootness defense.

On the other hand, PHA charges that the District Court erred in its ruling on the merits which rejected PHA's motion to vacate the Consent Decree, and that the instant appeal is moot. Thus, PHA asserts that we lack subject matter jurisdiction. PHA emphasizes that subject matter jurisdiction cannot be waived and cannot be created even where the parties have expressly consented to do so.

We agree with PHA that this appeal is moot and that the 1974 Consent Decree entered by the District Court should be vacated. Subject matter jurisdiction is lacking now, and became so at the time the then-Plaintiffs terminated their tenancies (*see* discussion, infra). The lack of subject matter jurisdiction may be raised even at this late stage.

Accordingly, we are obliged to reverse the District Court's Order which denied PHA's motion to vacate the 1974 Consent Decree and which was entered on December 16, 2002. In doing so, we will direct that the proceeding be remanded to the District Court so that the District Court may vacate the 1974 Consent Decree and dismiss the Complaint filed by the Browns in 1972.

## I.

The present action, which commenced with PHA filing the October 15, 2002 motion to vacate the Consent Decree, had its genesis in the action filed by the Browns on October 21, 1972. That Complaint, which was filed as a class action Complaint, alleged that the Browns were tenants of PHA and that PHA had evicted them and other PHA tenants with little, if any, notice and no opportunity for a hearing, all in violation of their due process rights. The Browns alleged that PHA had violated certain HUD Circulars, which gave tenants the right to notice and a grievance hearing before PHA could send lease termination notices.[1] They therefore claimed that they were denied due process because they did not receive the necessary notice or grievance procedure

---

1. *See* HUD Circulars 7465.8 and 7465.9 (eff. Feb. 22, 1971), now codified at 24 C.F.R. §§ 966.1-966.7 & 966.50-966.57.

before they were evicted. The case was treated by the District Court as a class action, although no class was ever certified. Nor was any motion for certification ever filed.

On June 14, 1974, with the approval of the District Court, the parties, the Browns and PHA, entered into a Consent Decree setting forth notice and grievance procedures to be followed by PHA when it terminated leases or evicted tenants. The provisions in the Consent Decree were based on tenant rights set forth in the aforementioned HUD Circulars. PHA asserts, without contradiction, that the Browns are no longer PHA tenants, and were not PHA tenants when the Consent Decree was entered. On April 17, 1978, the District Court approved certain agreed-upon amendments to the Consent Decree, which are not relevant to this appeal. The Consent Decree has not been altered since that date.

On October 15, 2002, PHA moved to vacate the Consent Decree pursuant to Fed. R. Civ. P. 60(b)(6), arguing that certain 1975 and 1991 HUD regulations and a 1983 statute constituted significant changes warranting vacatur.[2] *See Building & Construction Trades Council v. NLRB,* 64 F.3d 880 (3d Cir. 1995); *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378 (1992). PHA claimed that the amended regulations and statute provided broader protections to PHA tenants than did the Consent Decree. The Browns opposed vacatur of the Consent Decree, contending that it

---

2. HUD promulgated regulations governing public housing tenant grievance rights and procedures in 1975 and in 1991. The 1975 HUD regulations set forth notice provisions for lease termination. Those provisions required the notice to state the reason(s) for lease termination and required that the tenant be informed of the right to request a grievance hearing. The 1975 HUD regulations also set forth the criteria for grievance procedures to be implemented by public housing agencies, and required tenants to initially attempt informal settlements with the public housing agency, before requesting a grievance hearing.

The 1991 HUD regulations promulgated certain provisions concerning pre-eviction notice and tenants' post-termination grievance rights. In addition, Congress modified the U.S. Housing Act in 1983. The 1983 Congressional legislation set forth administrative grievance procedure regulations and requirements for notice and conditions of lease termination. *See* 42 U.S.C. §§ 1437d(k)-(l).

did not conflict with HUD regulations or any current federal law, and that the law governing a PHA tenant's grievance rights had not changed.

The District Court examined whether a "conflict" existed between the terms of the Consent Decree and the provisions of the subsequent federal regulations and statutes, holding that vacatur could be ordered only if such a conflict existed. Citing *Building & Construction Trades Council v. NLRB,* 64 F.3d 880, 888 (3d Cir. 1995), the District Court held that there was no conflict between the Consent Decree and subsequent statutes and regulations, and that in a number of instances PHA had not complied with the Consent Decree in its entirety. On those grounds, the District Court denied PHA's motion to vacate the Consent Decree.

PHA timely appealed from the District Court's denial of its motion to vacate the Consent Decree.

## II.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(a)(1), as an appeal from an interlocutory order refusing to dissolve or modify an injunction. We review a district court's denial of a Rule 60(b) motion for abuse of discretion. *See Reform Party of Allegheny County v. Allegheny County Dept. of Elections,* 174 F.3d 305, 311 (3d Cir. 1999); *see also, United States v. Wheeling-Pittsburgh Steel Corp.,* 866 F.2d 57, 59 (3d Cir. 1988).

## III.

Our focus is upon the argument, first raised by PHA in its reply brief,[3] that this appeal is moot because none of the

3. At oral argument, counsel for PHA was asked why PHA failed to raise the mootness issue in the nearly 30 years since the Consent Decree was entered, and why the issue was not raised in PHA's moving brief. PHA's counsel responded that it

was retained by the [Philadelphia] Housing Authority in 2002 to look at the issue of whether the Brown['s] Consent Decree could be vacated. In doing so, we prepared the motion that we filed in the

original Plaintiffs who brought the lawsuit currently reside in PHA housing.[4] In response, the Browns admit that the class was never formally certified by the District Court, but urge this Court to adopt a doctrine of "implied class certification." In addition, the Browns contend that because PHA had not sought vacatur of the Consent Decree on mootness grounds during the previous 30 years, PHA has waived the right to make this argument now.

The doctrine of mootness requires that "an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *New Jersey Turnpike Authority v. Jersey Cent. Power,* 772 F.2d 25, 31 (3d Cir. 1985) (citing *Steffel v. Thompson,* 415 U.S. 452, 459 n. 10 (1974); *Roe v. Wade,* 410 U.S. 113, 125 (1973);

---

District Court [to vacate the Consent Decree] and after the District Court ruled and denied our motion to vacate the Consent Decree, Appellees' counsel submitted a Petition for Counsel Fees. And in reviewing that Petition for Counsel Fees, they supplied us with a[n] invoice, if you will, or a statement of the services that they performed in responding to our motion. And when we looked at that statement, the name of the client identified on the statement was not any of the named plaintiffs.

So at that point, we called appellees' counsel and said, "who is this person" and at that point in time appellees' counsel said, "Well they're a tenant of PHA who has a grievance with PHA. We no longer represent the named plaintiffs in this case and we don't know where they are." So, at that point, the next thing that we filed was our appeal brief. . . . We didn't list it as an issue [in our moving brief] because at that point we hadn't confirmed all of the facts. We went back to the client to confirm that none of the named plaintiffs lived in PHA housing presently, and investigated to make sure that — if we asserted that there was no subject matter of jurisdiction — that we were correct in doing so.

In light of the sequence of events related by counsel for PHA, it was evident that the issue of mootness was never raised by PHA in the District Court.

4. Counsel for the Browns admitted at oral argument that after the Complaint was filled in 1972 — but before the Consent Decree was entered into in 1974 — the Browns "subsequently moved out" of PHA housing.

*Golden v. Zwickler,* 394 U.S. 103, 108 (1969)). Mootness has two aspects: (1) the issues presented are no longer live, or (2) the parties lack a cognizable interest in the outcome. *Id.* (citing *United States Parole Commission v. Geraghty,* 445 U.S. 388, 396 (1980)). In the class action context, special mootness rules apply. "Once a class has been certified, mooting of the class representative's claims does not moot the entire action because the class acquires a legal status separate from the interest asserted by its named plaintiff." *Lusardi v. Xerox Corp.,* 975 F.2d 964, 974 (3d Cir. 1992) (internal quotations omitted). Litigation may continue because the stake of other class members is attributed to the class representative.[5] However "when claims of the named plaintiffs become moot before class certification, dismissal of the action is required." *Id.* (internal citations omitted).

We conclude that this appeal is moot because it is uncontradicted that the Browns are not tenants in PHA housing. Their failure to meet this threshold status eliminates any case or controversy they might have concerning notice and hearing procedures for PHA tenants and thus precludes subject matter jurisdiction on this appeal. The record before us is unclear as to the time or times when the Browns were PHA tenants and therefore available to be actionable parties to the Complaint. Nevertheless, we are satisfied that if indeed the Browns were not tenants at the time the Complaint was filed or when the Consent Decree was entered, as is conceded, subject matter jurisdiction was also lacking in the District Court.

However, the Browns urge us to adopt a doctrine of "implied class certification." They refer us to other courts, which have seen fit to certify a case as a class action at the appellate level even though no Fed. R. Civ. P. 23 analysis was conducted at the district level. *See, e.g., Navarro-Ayala*

---

5. The special rules of mootness in the class action context are based on the theory that a controversy may continue to exist between a named defendant and a member of a certified class represented by a named plaintiff, even after the claim of the named plaintiff has become moot. *Sosna v. Iowa,* 419 U.S. 393, 399 (1975).

*v. Hernandez Colon,* 951 F.2d 1325 (1st Cir. 1991), *Bing v. Roadway Express, Inc.,* 485 F.2d 441 (5th Cir. 1973), *Senter v. General Motors Corp.,* 532 F. 2d 511 (6th Cir. 1976), and *Doe v. Bush,* 261 F.3d 1037 (11th Cir. 2001), *cert denied,* 534 U.S. 1004 (2002).

Rule 23 prescribes its own prerequisites to a class action certification: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These prerequisites must be satisfied, and in addition other findings are required by the district court pertaining to whether questions of law or fact common to the members of the class predominate over questions affecting only individual members and whether a class action is superior to other available methods. *See* Fed. R. Civ. P. 23(b)(3). Additional required findings include the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. *See id.*

Because these findings are essential to the maintenance of a class action, the Rule requires that "[a]s soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed. R. Civ. P. 23(c)(1). And, one of the primary functions of the District Court is to "describe those whom the court finds to be members of the class," and to specify who is to get notice — a notice which must be given to all members of the class at all relevant times. Fed. R. Civ. P. 23(c)(3).

The importance of this Rule and adherence to it cannot be underestimated. We observe that since the class action Rule was initially promulgated there has been extensive study devoted to the amendment of this Rule by the Rules

and Practice Committees of the Judicial Conference of the United States. These efforts have led to additional provisions of the Rule, which both reinforce and clarify its operation. *See, e.g.,* Report of Proposed Amendments to Federal Rule of Civil Procedure 23 (effective December 1, 2003). Significantly, many of the new requirements strengthen particular provisions of the Rule, but none have indicated any tendency to lessen the Rule's prescriptions to include an "implied class certification" devoid of the mandated fact findings and requirements which are the foundation of Rule 23.

Accordingly, we are neither attracted to, nor persuaded by, the cases cited to us by the Browns. Two of those cases — *Bing v. Roadway Express, Inc.,* 485 F.2d 441 (5th Cir. 1973) and *Senter v. General Motors Corp.,* 532 F. 2d 511 (6th Cir. 1976) — were filed before the Supreme Court issued its decision in *Pasadena City Bd. of Educ. v. Spangler,* 427 U.S. 424 (1976), in which it summarily dismissed any doctrine of "implied class certification" in dicta:

> [Defendant's arguments] that this litigation was filed as a class action, that all the parties have until now treated it as a class action, and that the failure to obtain the class certification required under Rule 23 is merely the absence of a meaningless "verbal recital" which counsel insists should have no effect on the facts of this case . . . overlook the fact that the named parties whom counsel originally undertook to represent in this litigation no longer have any stake in its outcome. As to them the case is clearly moot.

*Spangler,* 427 U.S. at 430. The remaining two cases, *Navarro-Ayala* and *Bush,* are clearly distinguishable.

In *Navarro-Ayala v. Hernandez Colon,* 951 F.2d 1325 (1st Cir. 1991), the First Circuit addressed a situation similar to that addressed by the Supreme Court in *Spangler,* but declined to follow the Supreme Court's lead in dismissing the argument that a class action can be certified "by implication."

Navarro-Ayala brought suit on behalf of himself and the other inpatients at a public mental health institution in

Puerto Rico in 1974. *Id.* at 1327. The action named the mental health institution and other officials as defendants. *Id.* No class was certified, and before trial in 1977 the parties executed a stipulation that ended the dispute (although no notice of the dispute was given to patients or their guardians), and Navarro-Ayala was transferred to a new facility. *Id.* at 1330. A Special Master was appointed to monitor the defendants' compliance with the stipulation. *Id.* at 1329.

More than ten years after the stipulation was entered, Navarro-Ayala alleged that he and other patients at the new facility were not receiving adequate treatment. *Id.* at 1331.

In response, the defendants disputed the court's jurisdiction over the new facility because Navarro-Ayala's 1974 suit was not a class action. *Id.* The district court found that the requirements for class certification were met when the stipulation was approved by the court in 1977, and no notice to the class was required. *Id.* at 1333. As PHA points out, Navarro-Ayala was clearly a member of the class at the time the district court's order was entered and it was never charged that Navarro-Ayala's claim or the case itself was moot.

The First Circuit distinguished *Navarro-Ayala* from *Spangler,* finding it significant that Navarro-Ayala expressly sued on behalf of a group of persons similarly situated and that the 1977 stipulation described the class members and provided for class-wide relief. *Id.* at 1335. That court also found it relevant that in *Spangler* the class certification issue was raised for the first time on appeal, whereas in *Navarro-Ayala* defendants had contested the class action status of the litigation before the district court. *Id.*

To us, these are distinctions without differences. The First Circuit in *Navarro-Ayala* failed to heed the Supreme Court's pointed indication in *Spangler* that where a class was not certified by the district court and the named plaintiff had lost his stake in the outcome of the litigation, the case is moot. Moreover, as PHA contends and as we agree, *Navarro-Ayala* is inapposite because mootness was not at issue there, as it is here. Thus, *Navarro-Ayala* is unpersuasive.

In *Doe v. Bush,* 261 F.3d 1037 (11th Cir. 2001), *cert denied,* 534 U.S. 1004 (2002), the final case cited by the Browns in favor of a doctrine of "implied class certification," plaintiffs were thirteen developmentally disabled people on the waiting list for entry into intermediate care facilities who brought a § 1983 suit on behalf of themselves and those similarly situated against officials of the Florida Department of Health and Rehabilitative Services in 1992, alleging that the long waiting lists violated the Medicaid Act and the Social Security Act. 261 F.3d at 1041-42. Plaintiffs filed a motion for class certification in 1992, but the court took no action on this request for four years. In 1996, the magistrate judge issued a report and recommendation that the class should be certified. *Id.* at 1043. Two days later, the district court granted summary judgment for the plaintiffs and denied as moot all of the plaintiffs' pending motions — including, presumably, the motion for class certification. *Id.* at 1043. The Eleventh Circuit affirmed. *Id.*

Thereafter, plaintiffs sought to enforce the summary judgment order by filing a motion for contempt, the district court found the defendants in contempt, and the defendants appealed, claiming that they were not obligated to comply with the order on a class-wide basis, because the suit was never certified as a class action. *Id.* at 1048. Then in 2000, the district court, *sua sponte* and without notice to the parties, entered an order adopting the magistrate judge's report and recommendation and certifying the class. *Id.* at 1043.

The Eleventh Circuit concluded that "although we recognize that the district court failed to properly certify a class, we conclude, nevertheless, that an "implied class" exists." *Id.* at 1049. We find *Bush* inapplicable here, not only because no issue was ever raised in *Bush* that the plaintiffs' claims had become moot, but also because the plaintiffs in *Bush* had sought certification, the magistrate judge had recommended certification, and the district court had certified the class. Here, class certification was neither sought by the Browns nor granted by the District Court, and none of the requirements and findings necessary to certify a class have ever been met or made here.

In particular, one of the more basic requirements of class certification — the requirement that the district court define or identify the class — has never been satisfied in this case. PHA points out that

> the Supreme Court in *Board of School Commissioners v. Jacobs,* 420 U.S. 129 (1975), held that for an order to constitute a class certification sufficient to protect a case from mootness, the order must, at a minimum, define the class. 420 U.S. at 130. As [the Browns'] appellee counsel themselves concede (Letter Brief at 2) even the implied [class] certification cases on which they rely require that the court's orders define or identify the class. *See, e.g., Doe,* 261 F.3d at 1051; *Navarro-Ayala,* 951 F.2d at 1334-35; *Senter,* 532 F.3d at 523; *Bing,* 485 F.2d at 447-48.

PHA Letter Brief at 5. We agree that, among other fundamental requirements, a class definition is missing from this proceeding and the record. Even if the record could supply that definition and cure the other findings that are missing from a proper class certification — it does not do so.

Hence, we hold that no implied class certification doctrine can take the place of, or be deemed a substitute for, an appropriate grant of class certification. Instead, the requirements and findings of Rule 23 must be met.

## IV

We have held in Part III above that at the time the Consent Decree was entered in 1974 the Browns were not parties, nor had any class been certified. PHA has therefore asserted that we have no subject matter jurisdiction. The Browns, as we have noted, claim that PHA's argument of mootness/no subject matter jurisdiction has been waived because PHA, through the years following 1974, participated as a party in the proceedings without objection and without raising any issue of mootness or lack of jurisdiction.

The difficulty with the Browns' argument is that subject matter jurisdiction is not a waiveable defense. Indeed, it is

well-settled that a party can never waive lack of subject matter jurisdiction. The Supreme Court has noted that

> Subject-matter jurisdiction, then, is an Art. III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign. Certain legal consequences directly follow from this. For example, no action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, principles of estoppel do not apply, and a party does not waive the requirement by failing to challenge jurisdiction early in the proceedings.

*Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 702 (1982) (internal citations omitted). *See also, Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574 (1999) ("subject-matter jurisdiction . . . is nonwaivable and delimits federal-court power."); *Okereke v. United States,* 307 F.3d 117, 120 fn. 1 (3d Cir. 2002) (citing *Pennsylvania v. Union Gas Co.,* 491 U.S. 1, 26 (1989) (Stevens, J., concurring) ("the cases are legion holding that a party may not waive a defect in subject-matter jurisdiction or invoke federal jurisdiction simply by consent.")); *Mennen Co. v. Atlantic Mut. Ins. Co.,* 147 F.3d 287, 293-94 (3d Cir. 1998) ("it is axiomatic that a party may not confer or defeat jurisdiction by mere pleading."); *Board of Trustees of Trucking Employees of North Jersey Welfare Fund, Inc. - Pension Fund v. Centra,* 983 F.2d 495, 506 fn. 12 (3d Cir. 1992). Indeed, Fed. R. Civ. P. 12(h)(3) provides, "[w]henever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

It is of no moment, therefore, that the defense of lack of subject matter jurisdiction was raised by PHA for the first time in its reply brief on appeal. *See* note 3, supra. The fact that PHA did not raise its mootness claim earlier in the proceedings cannot and does not confer jurisdiction on this Court, nor in the absence of a live Article III controversy can it provide District Court jurisdiction in this case. Defenses relating to subject matter jurisdiction can be raised at any time. *Sansom Committee by Cook v. Lynn,* 735

F.2d 1535, 1538 (3d Cir. 1984) (defense that district court lacked subject matter jurisdiction to enforce consent decree may be raised for the first time on appeal).

Accordingly, we reject the Browns' waiver argument because the Browns are not tenants in PHA housing, no class was ever certified, no Article III controversy exists, the instant appeal is moot, and subject matter jurisdiction is lacking.

## V

In *United States v. Munsingwear, Inc.,* 340 U.S. 36 (1950), the Supreme Court addressed a situation in which a suit was mooted during its pendency. The Court wrote:

> The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss. That was said in *Duke Power Co. v. Greenwood County,* 299 U.S. 259 (1936), to be 'the duty of the appellate court.'

*Munsingwear, Inc.,* 340 U.S. at 40. We will reverse the District Court's December 13, 2002 order refusing to vacate the Consent Decree, remand the case to the District Court, and direct the District Court to vacate the Consent Decree and dismiss the case.[6]

---

6. In normal course, having held that the case was moot and that we lacked subject matter jurisdiction, we would proceed no further. *Firestone Tire & Rubber Co. v. Risjord,* 450 U.S. 1028 (1981). Here, however, we digress from that principle because we believe that some guidance should be afforded to the bench and bar pertaining to the test for determining when a court ordered decree challenged under Rule 60(b) should be set aside as having lost its utility. The District Court in this case looked to whether a conflict existed between the provisions of the Consent Decree and the subsequently enacted regulations and statute. Having determined that no conflict existed, the Consent Decree's operation was continued and the challenge to it was rejected.

15

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*

---

Under the teachings found in *Building & Construction Trades Council v. NLRB,* 64 F.3d 880 (3d Cir. 1995), and *Rufo v. Inmates of Suffolk County Jail,* 502 U.S. 367, 378 (1992), there need not be a "conflict" to justify vacatur of a consent decree; a "significant change" with no attendant conflict constitutes sufficient grounds for vacatur. Our review of the federal statute and regulations promulgated after 1974 reveals that not only did they significantly change the relevant due process landscape (originally sought to be cured by the Consent Decree) but that they gave broader and more comprehensive protection to PHA residents than had been available under the Consent Decree.

Thus, the Consent Decree no longer had force or utility, and there was no reason for the Consent Decree to remain operative.