

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-25-2007

# Henderson v. Morrone

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-5317

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Henderson v. Morrone" (2007). *2007 Decisions.* Paper 1741.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1741

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 05-5317
_____

VANESSA HENDERSON, on behalf of herself
and all other persons similarly situated,

Appellant,

v.

ANTHONY MORRONE, individually and as Director of
the Section 8 Program of the Philadelphia Authority;
THOMAS J. KELLY, JR., individually and as Executive
Director of the Philadelphia Housing Authority;
THOMAS MCINTOSH, individually and as Chairman of the
Board of Directors of the Philadelphia Housing Authority;
HARRY SEWELL; HERMINE HART; CARMELITA THILL; DANTE MATTIONI,
Individually and as members of the Board of Directors of the
Philadelphia Housing Authority; PHILADELPHIA HOUSING AUTHORITY

Vanessa Henderson and the certified
class whom she represents,

Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 79-cv-04190)
District Judge: Honorable Clifford Scott Green
Submitted Under Third Circuit LAR 34.1(a)
Wednesday, December 13, 2006

Before:  FISHER, CHAGARES and GREENBERG, Circuit Judges.

_____

_____

OPINION OF THE COURT
_____

CHAGARES, Circuit Judge.

Appellant Vanessa Henderson, on behalf of herself and others similarly situated, appeals from an order granting the Philadelphia Housing Authority's ("PHA's") motion to vacate a consent decree. The District Court determined that vacatur was proper because the "purpose of the consent decree ha[d] been satisfied." Because we disagree with the District Court's construction of the decree, we will reverse and remand.

I.

In 1979, Vanessa Henderson was a low-income tenant receiving a rent subsidy from the PHA as part of the federal Section 8 assistance program.[1] In October of that year, the PHA sent Henderson a letter stating that, effective immediately, it was terminating her housing-assistance payments. The letter asserted that Henderson had misrepresented her family income and composition. Henderson responded by filing a class-action complaint in the United States District Court for the Eastern District of Pennsylvania. She contended that the PHA's failure to provide pretermination notice and

_____

[1] "The federal section 8 rental assistance program was established under the United States Housing Act of 1937, 42 U.S.C. § 1437 *et seq.*, and provides rent subsidies for low- and moderate-income participants so that they can afford to lease privately owned housing units." Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 544 n.4 (3d Cir. 2006).

an opportunity to be heard deprived her (and others similarly situated) of the process they were constitutionally due.  See U.S. Const. amend. XIV, § 1.

Protracted settlement negotiations followed.  By July 1982, the parties still had not reached an agreement, and the case remained pending in the District Court.  Then, on July 26, the U.S. Department of Housing and Urban Development ("HUD") released proposed regulations dealing with pretermination process for recipients of Section 8 assistance. See Section 8 Housing Assistance Payments Programs–Existing Housing, 47 Fed. Reg. 32169 (July 26, 1982).  The notice and hearing requirements described in the proposed regulations were substantially similar to those sought by Henderson's complaint.

Five months later, with the proposed regulations still pending, the parties filed a settlement stipulation in the District Court.  The introductory portion of the agreement stated that plaintiffs had brought suit to challenge "the defendants' failure to provide [them]. . . with notice and an opportunity to be heard prior to the termination" of Section 8 assistance.  Appendix ("App.") 17.  The PHA, for its part, denied any deprivation of the plaintiffs' rights, but it agreed to the stipulation "in the interest of avoiding litigation." App. 18.

The stipulation stated that the PHA could terminate benefits only for good cause, and it provided for 30-days advance written notice of the termination.  The notice had to inform the tenant of the reasons for the PHA's decision, the tenant's right to request an informal hearing within 10 days, and the tenant's right to be represented by counsel at the hearing.  Upon receipt of a hearing request, the PHA had to provide the tenant with a

3

written explanation of the hearing procedures. The tenant also had the right to inspect and copy all relevant PHA documents. At the hearing itself, the tenant could examine evidence, question adverse witnesses, and present testimony in her favor. While the hearing officer could be a PHA employee, the employee could not "be involved in the day to day administration of the [Section 8] program." App. 20. Following the hearing, the hearing officer was required to render a written decision stating "the legal and evidentiary" basis for the determination. App. 19. Tenants would have 30 days to appeal from an adverse ruling.

At the time of the agreement, the parties obviously were aware of the looming possibility that the proposed HUD regulations would become final regulations. Paragraph 13 of the stipulation explicitly addressed that contingency:

> Should [HUD] promulgate regulations which require PHA to perform acts which are inconsistent with this Stipulation or which prohibit PHA from performing acts consistent with this Stipulation, such regulations shall govern. In the event that such regulations are promulgated, either party shall file an appropriate petition to modify this decree. This provision shall not be construed as a waiver of either party's right to challenge the validity of such regulations in an appropriate forum.

App. 21.

The District Court approved the stipulation in April of 1983 and entered it as an enforceable order of the court ("the consent decree").

The next year, HUD's proposed regulations (with some revisions) became final regulations. See Section 8 Housing Assistance Payments Program; Existing Housing, 49

4

Fed. Reg. 12215 (March 29, 1984).[2]  The HUD regulations are in many ways identical to the protections provided by the consent decree.  Housing authorities must provide tenants with notice of the reason for the proposed termination, notice of the right to an informal hearing, and notice of the deadline for requesting a hearing.  See 24 C.F.R. § 982.555(c)(2)(A).  Tenants also have rights to discovery, to legal representation at their own expense, and to present evidence and question witnesses at their hearings.  See 24 C.F.R. §§ 982.555(e)(2)(i), (e)(3), (e)(5).  The hearing officer must be uninvolved in the decision under review, and must state the reasons for the decision.  See 24 C.F.R. §§ 982.555(e)(4), (e)(6).

But despite these broad similarities, there are some differences.  First, while the consent decree requires 30-days notice prior to termination, the regulations do not set out a specific number of days.  See 24 C.F.R. § 982.555(c)(2).  Second, although both the decree and the regulations provide a right to counsel at the tenant's own expense, only the decree requires that notice of this right be provided in the initial notice of intent to terminate benefits.  Third, the decree mandates at least 10-days notice of the hearing date, while the regulations leave the amount of notice to the housing authority's discretion.  Fourth, only the decree requires the PHA, upon receipt of a hearing request, to "give the tenant a written explanation of the hearing procedure."  Fifth, the consent decree requires hearing officers to "state the legal and evidentiary grounds for the decision."  The

---

[2]From time to time, HUD has amended these regulations.  See, e.g., 24 C.F.R. § 982.555(e)(2) (providing limited rights to prehearing discovery).

regulations, on the other hand, require only a brief statement of "the reasons for the decision." 24 C.F.R. § 982.555(e)(6). Sixth, the consent decree states that persons "involved in the day to day administration of the [Section 8] program" may not be hearing officers, but the HUD regulations are not so broad. A person involved in day-to-day administration (or anyone else) can serve as a hearing officer under the regulations so long as he or she is not the "person who made or approved the decision under review or a subordinate of this person." 24 C.F.R. § 982.555(e)(4)(i). And seventh, the decree requires notice of a right to appeal within 30 days, and allows tenants to "petition for clarification" of a "vague or ambiguous decision." The regulations contain no such rights.

After HUD issued its final regulations in March of 1984, neither party attempted to modify the decree, no one ever brought contempt or enforcement proceedings, and it appears that the PHA continued to perform its obligations under the decree. In fact, for 21 years not a single docket entry was added in the District Court. Then, like a bolt out of the blue, the PHA moved to vacate the consent decree in November of 2004 "based upon significant changes in the law." App. 25. The "significant changes" it relied on were the 1984 HUD regulations.

After hearing oral argument, the District Court vacated the decree. This appeal followed.

II.

6

Generally speaking, we review an order modifying a consent decree pursuant to Fed. R. Civ. P. 60(b) for abuse of discretion. See Holland v. N.J. Dep't of Corr., 246 F.3d 267, 281 (3d Cir. 2001). Nonetheless, to the extent the District Court's order turned on its construction of the decree, we exercise plenary review. Id. at 277 ("This Court. . . has held many times that a district court's construction and interpretation of a consent decree is subject to straightforward plenary or de novo review."). If the District Court misconstrued the decree, its legal error necessarily constitutes an abuse of discretion. See Coltec Industries, Inc. v. Hobgood, 280 F.3d 262, 269 n.8 (3d Cir. 2002).

A consent decree entered on a "stipulation of the parties has the characteristics of a contract, [and] contract principles govern its construction." McDowell v. Philadelphia Housing Authority, 423 F.3d 233, 238 (3d Cir. 2005). "One of these principles is that an unambiguous agreement should be enforced according to its terms." Id.

Here, the District Court's sole basis for vacating the consent decree was its determination that the decree's "purpose ha[d] been satisfied." Specifically, the court construed Paragraph 13 to establish that the parties intended the decree as no more than a temporary stopgap to "provide due process to families receiving benefits under section 8 housing until HUD regulations were promulgated." Since HUD had indeed promulgated regulations in 1984, the agreement's purpose had been fulfilled and vacatur was appropriate.

We cannot agree with that construction of the consent decree. If the parties had intended for their bargain to become inoperative once HUD promulgated final

7

regulations, they certainly could have said so.  But as it stands, Paragraph 13 recognizes the possibility of final HUD regulations, and proceeds to state only two limited situations in which they "shall govern": (1) if they "require PHA to perform acts which are inconsistent with" the stipulation, and (2) if they "prohibit PHA from performing acts consistent with" the stipulation.  App. 21.  The next sentence reads: "In the event that *such* regulations are promulgated, either party shall file an appropriate petition to modify this decree."  Id. (emphasis added).  The phrase "such regulations" plainly refers back to the two types of regulations described in the previous sentence.  By stating these two limited situations in which the HUD regulations would "govern," the agreement expresses the parties' intent to be governed by their bargain with respect to any other differences between the two.  Cf. Plumbers & Steamfitters Local 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443, 1449 (11th Cir.1991) ("The doctrine of *expressio unius est exclusio alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded.").

The PHA attempts to avoid this straightforward reading of Paragraph 13 by relying on this statement from the consent decree's introductory paragraph: "Plaintiffs have commenced a civil class action seeking [relief for] the defendants' failure to provide tenants under the Section 8 Housing Assistance [Program] with notice and an opportunity to be heard prior to the termination of the tenants from participation in the Program." App. 17.  The PHA reads this sentence to "clearly indicate[] that the purpose of the Consent Decree was to fill the void of no regulations and no notice and hearing

8

procedures, not to obtain particular terms and procedures for the notice and hearing."

PHA Brief at 30-31. We disagree for two reasons. First, the quoted sentence states the plaintiffs' purpose for "commenc[ing] a class action"; it does not state their purpose for entering into a stipulation. Second, this generalized statement of purpose does not purport to nullify the plain and specific terms of Paragraph 13.

We therefore construe the consent decree to mean what it says: HUD's final regulations trump the parties' bargain only when they "require PHA to perform acts which are inconsistent with" the stipulation, and when they "prohibit PHA from performing acts consistent with" the stipulation. App. 21; see McDowell, 423 F.3d at 238. Because the consent decree simply provides greater and more specific protections for tenants, the HUD regulations do neither of these things. For example, the HUD regulations do not require the PHA to inform tenants of their right to counsel in the initial notice of intent to terminate benefits, but they certainly do not forbid it. The HUD regulations may not mandate that the PHA provide "a written explanation of the hearing procedure," but they do not prevent the PHA from doing so. The regulations require only a brief statement of "the reasons for the decision," 24 C.F.R. § 982.555(e)(6), but they do not prohibit the hearing officer from providing a more detailed explanation of the decision's "legal and evidentiary" basis. And although the regulations do not mandate notice of rights to appeal or to "petition for clarification," the PHA is free to do so consistent with the regulations. In short, nothing in the HUD regulations requires an act inconsistent with the consent decree, and nothing in the HUD regulations forbids an act

9

consistent with the consent decree. Accordingly, it was error to conclude that the promulgation of HUD regulations satisfied the purpose of the agreement.

### III.

Independent of the District Court's reasons, the PHA also argues that vacatur is appropriate because "it is no longer equitable that the judgment should have prospective application." Fed. R. Civ. P. 60(b). The Supreme Court has held that "a party seeking modification of a consent decree bears the burden of establishing that a significant change in circumstances warrants revision of the decree." Rufo v. Inmates of the Suffolk County Jail, 502 U.S. 367, 383 (1992). This burden can be met by "showing a significant change either in factual conditions or in law." Id. at 384. "Ordinarily,. . . modification should not be granted where a party relies upon events that actually were anticipated at the time it entered into a decree." Id. at 385; see also Building & Construction Trades Council of Philadelphia v. NLRB, 64 F.3d 880, 888 (3d Cir. 1995) ("Central to the court's consideration will be whether the modification is sought because changed conditions unforeseen by the parties have made compliance substantially more onerous or have made the decree unworkable.")

The PHA argues that HUD's final regulations constituted a significant change in the law. We have no doubt that they were, but the fact remains that the parties "actually. . . anticipated" the promulgation of HUD regulations at the time of their agreement. See Rufo, 502 U.S. at 383. Their agreement expressly states the two circumstances in which

10

the HUD regulations control, and (as we have explained) neither one is applicable.[3]  In

light of the consent decree's own terms, the most equitable result is to hold the parties to

their bargain.

IV.

We will reverse the District Court's order and remand for further proceedings

consistent with this opinion.

---

[3]Notwithstanding the parties' anticipation of final HUD regulations, the PHA views our dictum in <u>Brown v. Philadelphia Housing Authority</u>, 350 F.3d 338 (3d Cir. 2003), as controlling in this case.  In <u>Brown</u>, we held that "the case was moot and that we lacked subject matter jurisdiction," but nonetheless offered "some guidance. . . to the bench and bar pertaining to the test for determining when a court ordered decree should be set aside as having lost its utility."  <u>Id.</u> at 448 n.6.  We stated that "there need not be a conflict" between a consent decree and a subsequent change in the law.  Rather, "a significant change with no attendant conflict constitutes sufficient grounds for vacatur." <u>Id.</u>  Our dictum in <u>Brown</u> was quite true, but quite inapposite here.  In <u>Brown</u>, the parties' agreement had not explicitly anticipated the change in law, nor did it provide for the limited situations in which the contemplated change would govern.  Moreover, in <u>Brown</u> the relevant changes in law "gave broader and more comprehensive protection to PHA residents than had been available under the Consent Decree," and as a result "the Consent Decree no longer had force or utility."  <u>Id.</u>  The Henderson decree, on the other hand, provides greater protections than the HUD regulations and remains useful for tenants on Section 8 assistance.  As a result, <u>Brown</u> provides no help to the PHA.