NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

NOS. 09-4508 and 10-3571

_____

SUBIR RAY,
Appellant

v.

PINNACLE HEALTH HOSPITALS, INC.;
RAYMOND KOSTIN; DANA KELLIS; ROGER LOGENDERFER

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(D.C. Civil No. 1-07-cv-00715)
District Judge:  Hon. Sylvia H. Rambo

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
November 2, 2010

BEFORE:  SCIRICA, STAPLETON and ROTH, *Circuit Judges*

(Opinion Filed: November 22, 2010)

_____

STAPLETON, *Circuit Judge*:

In this appeal, plaintiff-appellant Dr. Subir Ray challenges the District Court's grant of summary judgment to defendants Pinnacle Health Hospitals, Inc., Dr. Raymond Kostin, Dr. Dana Kellis, and Dr. Roger Longenderfer on Ray's claims of racial discrimination and retaliation under 42 U.S.C. § 1981. The issues on appeal are: (1) whether the District Court erred in granting summary judgment for defendants on Ray's retaliation claims; (2) whether the District Court erred in granting summary judgment on some of Ray's racial discrimination claims; and (3) whether the District Court abused its discretion in denying Ray's motion under Fed. R. Civ. P. 62.1. Because Ray waived his retaliation claims in the District Court and did not tender evidence that would allow a jury to reject Pinnacle's legitimate non-discriminatory reason for the allegedly discriminatory actions addressed in Ray's brief, we will affirm the grant of summary judgment. The Court did not abuse its discretion in making its Rule 62.1 ruling.

## I. Background[1]

### A.

Plaintiff-appellant Subir Ray is a general surgeon of Asian-Indian race. Defendant-appellee Pinnacle Health Hospitals is a Pennsylvania non-profit hospital providing acute care, including surgical services. Dr. Raymond Kostin is Pinnacle's Chairman of the Department of Surgery and Interim Director of the General Surgery Residency Program. Dr. Dana Kellis is Senior Vice President of Medical Affairs at

---

[1] Because we write only for the parties, and to protect the privacy of the patients, doctors, and the hospital, we do not include details of the disputed patient case histories.

2

Pinnacle. Dr. Roger Longenfender was Pinnacle's President and Chief Executive Officer at the time of the dispute.

From 1992 through July 2007, Ray was a member of the Medical Staff at Pinnacle and enjoyed surgical privileges there but was not employed by the hospital. Until January 2007, Ray's surgical privileges were regularly renewed for a period of two years. Medical staff members must undergo a reappointment process at regular intervals of not more than every two years. Although his privileges were regularly renewed, Ray was never invited to join the faculty of the hospital's residency program, despite his periodic requests. He was, however, occasionally assigned residents who would assist him and cover for him in the emergency room. Faculty membership would have assured him continuous access to residents in return for his training them in surgical procedures and giving them surgical experience.

The surgical privilege reappointment process requires a review of a member's credentials by a Credentials Committee, which makes recommendations to a Medical Staff Executive Committee (MEC). The MEC, which represents and acts for the medical staff, makes recommendations to the hospital's board of directors regarding physician applications for reappointment to the medical staff. If the medical staff recommends that a physician's application for reappointment be denied, the medical staff must provide for a fair hearing and an appeals process.

In 1999, Ray was the subject of a quality assurance (QA) review by a fair hearing committee (FHC) because of reported problems with various patient outcomes. The FHC, headed by then-chair of surgery Stephen Weiss, recommended (and the Board of

3

Directors adopted) corrective action, including a "100% quality assurance review" of Ray's patient caseload for one year and Ray's participation in no less than 75% of the Surgery Department's continuing education programs. In 2002, the Surgical Faculty discussed adding Ray to the faculty but decided not to because of unresolved QA issues. They did, however, continue to renew Ray's surgical privileges for periods of two years through December 2006.

On January 31, 2007, Pinnacle notified Ray that it would renew his surgical privileges only for six months due to an on-going QA investigation into several of Ray's patient case histories, which had been triggered by complaints from various hospital departments, including nursing and anesthesiology. On April 17, 2007, Ray filed a complaint in District Court claiming racial discrimination and conspiracy under 42 U.S.C. §§ 1981 and 1985.[2]

Dr. Kostin, who had become Chairman of the Department of Surgery and Interim Director of the General Surgery Residency Program at Pinnacle, reviewed Ray's patient histories. On April 18, 2007, Kostin recommended to a Pinnacle Credentials Committee that it deny Ray's application for reappointment. The Credentials Committee, comprised of ten doctors, voted unanimously to accept Kostin's recommendation. The MEC - 24 doctors from various departments of the Medical Staff - reviewed and unanimously approved the Credentials Committee recommendation on April 24, 2007. Defendants Dr. Kostin and Dr. Kellis abstained from voting.

---

[2] Ray does not contest the District Court's dismissal of his § 1985 claim.

On Ray's request, a fair hearing was conducted on July 16 and 17, 2007, for approximately seven hours. The hearing was scheduled around Ray's planned two-week vacation in early July. Prior to the hearing, Ray agreed to the number of members and the particular physicians on the FHC. In addition, Ray objected to and succeeded in having replaced one of the physicians originally suggested as a member of the FHC. The panel consisted of three physicians (rather than the customary five) and an attorney, who served as presiding officer. Both sides were represented by counsel, presented briefs and documentary evidence, examined and cross-examined witness, and presented oral arguments.

On July 19, the FHC deliberated for over two hours and found that most of the MEC's findings had a factual basis, were reasonable, and were not arbitrary or capricious. However, the FHC also found that several of the MEC's findings were unreasonable or unsupported by the record, including all of its findings regarding one of the patients in question. The FHC unanimously recommended denying Ray's reappointment application. The reason for the recommendation was exercise of poor clinical judgment in pre-operative, inter-operative, and post-operative patient care rendering patient care below accepted standards of medical practice.

Although four of the six patients the MEC reviewed died after surgery, the FHC did not conclude that Ray's actions caused these deaths. The FHC also strongly recommended procedural improvements to the MEC that the FHC believed would improve the credibility of the review process. However, the Committee determined that

the perceived shortcomings of the MEC review of Ray's patient histories did not affect the ultimate outcome.

On August 29, 2007, an Appellate Review Committee, comprised of three members of Pinnacle's Board of Directors, unanimously confirmed the FHC's recommendation that the hospital deny Ray's reappointment to the surgical staff. The appeals committee reviewed the full records including Fair Hearing transcripts, written statements of the parties, oral arguments and response to questions. Committee members unanimously concluded that Ray did not show that the charges of the MEC lacked a factual basis. They noted that the clinical concerns regarding Ray had been reviewed by the Surgical Quality Assurance Committee, Chairman of the Department of Surgery, Credentials Committee, Medical Executive Committee, and Fair Hearing Committee. The Appeals Committee found that Ray's suggestion that he had not had a fair hearing was not supported by the record, noting that the three surgeons on the FHC had reviewed the full original medical records of each case available, heard extensive testimony from Ray and from Ray's expert, Dr. Holman, and adopted Ray's position on a number of factual issues. On September 24, 2007, the full board of directors voted to deny reappointment to Ray.

In the meantime, on July 31, 2007, another area hospital requested information from Pinnacle in response to Ray's application for surgical privileges at the other hospital. Pinnacle promptly supplied the requested information. On November 12, 2007, the other hospital requested additional information. Pinnacle did not respond to the second request because it had provided an Adverse Action Report to the National

6

Practitioner's Data Bank regarding the denial of Ray's reappointment application. Hospitals are required to query this data bank for information.

**B.**

Ray filed suit against Pinnacle in the Middle District of Pennsylvania on April 17, 2007. He alleged claims under 42 U.S.C. § 1981 for discrimination based on race. Thereafter, Ray amended his complaint to allege retaliation claims based on the filing of this suit. The District Court granted summary judgment to the defendants on all claims.

Ray filed a timely notice of appeal. Subsequently, Ray filed a Fed. R. Civ. P. 62.1 Indicative Ruling Motion with the District Court. Ray sought to have the District Court rule that if this Court were to remand the case, the District Court would grant a Fed. R. Civ. P. 60 motion to amend its judgment, on the theory that the defendants' failure to move for summary judgment on Ray's retaliation claims left those claims outstanding and that summary judgment should not have been granted on those claims. The District Court denied the motion stating that it could not represent that it would grant Ray's motion if the case were remanded to it and could not say that Ray's motion raised a substantial issue. The appeal from summary judgment and the appeal from the denial of the Rule 62.1 motion to alter judgment are now joined before this Court.[3]

_____

[3] The District Court had federal question jurisdiction over this action under 42 U.S.C. § 1981 and 42 U.S.C. § 1985. We have jurisdiction over the District Court's final orders under 28 U.S.C. § 1291. We review the District Court's grant of summary judgment de novo. *Hahnemann Univ. v. All Shore, Inc.*, 514 F.3d 300, 305 (3d Cir. 2008). Although we have not previously decided the standard of review for a district court's denial of a Rule 62.1 motion, we will review for abuse of discretion as Rule 62.1 was designed to adopt the practice most trial courts follow when a party makes a Rule 60(b) motion. Fed. R. Civ. P. 62.1 cmt. We review a district court's denial of a Rule 60(b) motion for abuse

## II. Waiver of the Retaliation Claims

Ray's Second Amended Complaint complained in Count I of the denial of permission to participate in the Surgical Residency Teaching Program; in Count II of his reappointment as a member of the Medical Staff for only six months in January of 2007; in Counts III and IV of the failure to renew his staff privileges; and in Count V of the failure to respond to the inquiries of the Carlisle Hospital. The actions of the defendants addressed in all counts were alleged to be "discriminatory." The actions of the defendants addressed in Counts II, III, IV and V were alleged to be "discriminatory and retaliatory." The District Court granted summary judgment to the defendants on all of Ray's claims.[4]

Defendants' motion for summary judgment unmistakably sought summary judgment on each count of the amended complaint. Similarly, their brief in support of their motion addressed each of those counts. With respect to the claims stated in Counts III and IV regarding the failure to renew staff privileges, the defendants' brief addressed the claims that surgical privileges were denied in retaliation for the bringing of this action. It argued that Ray could not show causation because the process that resulted in the denial of his privileges was initiated well before the suit was filed. With respect to

---

of discretion. *Brown v. Philadelphia Housing Authority*, 350 F.3d 338, 342 ( 3d Cir. 2003).

[4] Ray suggests, to the contrary, that the order appealed from is not a final order and that we, accordingly, have no jurisdiction. He is in error. The District Court's order directs that "Defendants' motion for summary judgment . . . is GRANTED. The clerk of court is directed to enter judgment for Defendants against Plaintiff and to close the case." App. at 24. The clerk did so.

Count II, the defendants insisted that Ray could not establish liability because the six month limited extension of privileges resulted solely from the initiation and continuation of that process.[5]

Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment addressed his Count III and IV claims in an argument which makes no reference to retaliation and which is captioned as follows:

> The Defendant Failed to Meet its Burden of Proof to Demonstrate the Plaintiff Cannot Establish a *Prima Facie* Case of Discrimination on the Decision Not to Reappoint the Plaintiff.

There is no argument in the entire brief explaining how Ray was going to be able to establish that he is entitled to recover on any of his retaliation claims. The sole reference to retaliation is in the following isolated passage from the section addressing Count V:

> The Plaintiff asserts the decision not to respond [to the Carlisle Hospital] was retaliatory and discriminatory. In short, the Plaintiff argues the Section 1981 violation which resulted in the revocation of medical staff privileges at Pinnacle, was extended and exacerbated by the discriminatory act of refusing to respond to Carlisle Hospital's request for information.

*Id*. at 17-18.

"It is a well settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If it does not do so, and loses the motion, it cannot raise such reasons on appeal." *Liberles v. County of Cook*, 709 F.2d 1122, 1126 (7th Cir. 1983); *accord*

---

[5] Defendants' brief contended that Count V did not state a claim under § 1981 because it identified no existing or proposed contractual relationship that had been impaired and because it was barred by limitations.

9

*Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") (internal citation omitted).

We cannot fault the District Court for failing to address retaliation claims which Ray had waived, and we may not permit him to press them for the first time on appeal.[6]

### III.  Failure to Tender Sufficient Evidence of Pretext

Section 1981 guarantees the right of all persons in the United States "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981; *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010).  The substantive elements of a § 1981 claim are generally identical to the elements of an employment discrimination claim under Title VII and are analyzed pursuant to the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  *See Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-182 (3d Cir. 2009).  The plaintiff must first establish a *prima facie* case of discrimination.  *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993).  The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's [termination]."  *McDonnell*

---

[6] We will also not consider additional evidence of retaliation Ray attempts to introduce on appeal.  As an appellate court, we do not "take testimony, hear evidence or determine disputed facts in the first instance.  Instead, we rely upon a record developed in those fora that do take evidence and find facts."  *In re Capital Cities/ABC, Inc.'s Application for Access to Sealed Transcripts*, 913 F.2d 89, 96 (3d Cir. 1990) (internal citation omitted).  We do not consider material on appeal that is outside of the district court record.  *Webb v. City of Philadelphia*, 562 F.3d 256, 261 n.4 (3d Cir. 2009).

*Douglas,* 411 U.S. at 802. Finally, the plaintiff must prove by a preponderance of the evidence "that the employer's proffered reasons were merely a pretext for discrimination, and not the real motivation for the unfavorable job action." *Sarullo v. U.S. Postal Serv.,* 352 F.3d 789, 797 (3d Cir. 2003) (quoting *Tex. Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)).

In a summary judgment context, this means that once the employer articulates a legitimate, non-discriminatory reason, "the plaintiff must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

### A. Failure to Renew Staff Privileges

For present purposes, we may assume that Ray presented a *prima facie* case of discrimination.[7] In response, defendants represented that the failure to renew Ray's privilege was the result of an extensive review of his professional performance. In support of this position, defendants tendered evidence that the review consisted of a pre-existing, multi-level process involving at least 37 different staff members drawn from across Pinnacle's 800 member staff that represented at least 46 different countries. In addition, defendants presented the facts and supporting documents behind six separate incidents, in some cases quite serious, where Ray's professional expertise or judgment

---

[7] As a result, we need not address Ray's contention that the District Court employed the wrong standard in concluding that he did not present a *prima facie* case.

11

were called into question.  The complaints which occasioned the quality assurance review of these incidents originated in several different departments.

In light of this evidence the question is whether Ray tendered enough evidence of pretext to support a jury finding that his race was a motivating factor in the decision not to renew his privileges.  As the District Court correctly concluded, he tendered very little in addition to his own general assertion that the whole review process was tainted by racial animus.  Ray does not claim race was discussed by any of the participants in the process at any time.  Nor does he contest the facts which occasioned the QA review or the unanimity of the decision makers.

Ray relies primarily upon evidence which he insists shows that similarly situated Caucasian physicians were treated differently, that the process was unfair, and that his professional expertise and judgment are good.  Given the totality of the summary judgment record, however, Ray's evidence would not support a judgment in his favor.

Pinnacle produced in discovery more than six thousand pages of quality assurance information.  These documents were comprised of quality assurance reviews for the six year period beginning January 1, 2000, and involved 152 physicians in the Department of Surgery.  From these documents, Ray found two Caucasian physicians whom he contends had worse records but were better treated.  One went through the same multistep review process as Ray and was required to take a leave of absence for additional training.  The other had his privileges renewed.

While it does appear that neither of these comparators had been the subject of concerns giving rise to two separate quality assurance reviews as Ray had, the summary

judgment record concerning them is not sufficiently detailed to permit a reliable analysis of whether their performances were equal to or worse than Ray's. But even assuming that both were similarly situated to Ray, he cannot show pretext by picking out one or two surgeons who might have been treated differently.

While identification of one or two comparators may be sufficient at the *prima facie* stage of analysis, it is not sufficient at the pretext phase. *See Simpson v. Kay Jewelers,* 142 F.3d, 639, 645-46 (3d Cir. 1998) (evidence of more favorable treatment of a single member of a non-protected group may create an inference of discrimination at the *prima facie* phase, "but not necessarily at the pretext phase where the factual inquiry into the alleged motives of the employer has risen to a new level of specificity.").

Ray has also not tendered evidence raising an inference that the review process was designed to discriminate against him. The lengthy transcript of the FHC indicates that the panel of doctors carefully considered all of the case histories over the course of two evenings, agreed with Ray regarding some of the findings of the MEC, and then deliberated for two hours on a third evening before rendering its decision that Ray's actions in the disputed cases fell below the standards of acceptable medical practice.

Ray's contention that the composition of the FHC is evidence of pretext also fails. Ray argues that the FHC should have been comprised of five rather than three physicians to be in compliance with Pinnacle by-laws, and that he was prejudiced by having a direct competitor on the panel. Ray argued that he was forced to accept the three-member panel and the specific doctors because of time constraints, but he supported this contention before the District Court with an unsworn "Declaration." That "Declaration," however,

13

is at odds with Ray's deposition testimony and other evidence that he had no idea how many people should be on the committee, that he agreed to the number of people and the individuals on the panel without objection, that the hearings were scheduled around Ray's summer vacation plans, that he waived the time requirements in the bylaws, and that he successfully objected to and had replaced a proposed committee member.[8]

Because it conflicts with his more reliable deposition testimony, given under oath and subject to cross examination, as well as with other evidence in the record, Ray's "Declaration" does not raise a genuine issue of material fact. To the limited extent his statement addresses having a competitor on the panel, it is corroborated by his deposition testimony. However, there is no testimony or record support for his contention that time constraints forced his decision making. Ray's burden is to show racial animus, not competitive prejudice. Even if he contends the decision making of the FHC was somehow wrong, this alone is not sufficient to create an inference of animus.

---

[8] The District Court refused to consider the statement because it was unsworn. Unsworn declarations may substitute for sworn affidavits where they are made under penalty of perjury and otherwise comply with the requirements of 28 U.S.C. § 1746. However, statements which conflict with an individual's deposition testimony do not raise a genuine issue of material fact and can properly be disregarded where the conflict is unexplained or unsupported by other record evidence. *See Jimenez v. All American Rathskeller*, 503 F.3d 247, 253-54 (3d Cir. 2007*)*(sham affidavit cannot raise a genuine issue of material fact when it contradicts earlier deposition testimony; deposition testimony is more reliable because subject to cross examination); *see also Byrne v. Monmouth Cnty. Dept. of Health Care Facilities*, 372 Fed. Appx. 232, 233-234 (3d Cir. 2010) (unsworn certification not supported by any documentation or factual testimony is insufficient to defeat summary judgment); *Williams v. Borough of West Chester,* 891 F.2d 458, 460 (3d Cir.1989) (nonmoving party cannot simply assert factually unsupported allegations to meet burden at summary judgment).

Finally, Ray relies upon the deposition testimony of Dr. Holman, who was director of Pinnacle's residents' training program from 2002 to 2006. Holman testified that he considered Ray to be the best laparoscopic surgeon at Pinnacle, and that Holman's review of Ray's patient records never led him to believe Ray did not qualify to be a surgical faculty member. One surgeon's opinion that Ray was a good doctor is insufficient to suggest that race motivated the decisions of four separate review panels, comprised of over 37 physicians and Pinnacle's board of directors, all of whom reviewed Ray's patient records. Dr. Holman testified at the FHC on behalf of Dr. Ray, and his opinion was duly considered by the FHC and the Appeals Committee.

It is not enough for Ray to show that there was a difference of professional opinion between Holman and the decision makers or that Pinnacle's decision making may have been wrong or mistaken. *See, e.g., Fuentes*, 32 F.3d at 765 (factual dispute is whether "discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." ). The plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1109 (3d Cir. 1997).

## B. Renewal of Staff Privileges for Six Months Only

Ray's staff privileges were renewed in January of 2007 for a six month period rather than the usual two year period because of the pendency of a QA proceeding. During the period from 2005 through 2007, there were four other physicians whose appointment periods were less than two years, and all were Caucasians. This as well as

15

the record evidence referenced in the preceding section establishes that a verdict in favor of Ray on this claim would not have adequate support.

## C. Ray's Other Claims

### 1. Denial of Participation in Residency Program

Ray asserts that Pinnacle refused to explain why Dr. Kostin prevented him from being appointed to the faculty of the surgical residency program and that no other surgeon who asked was denied appointment. He argues that, as he was the only Asian Indian surgeon on staff, the reasonable inference to be drawn is that the failure to appoint him was the result of prejudice. Pinnacle, however, showed that its concerns about Ray's patient outcomes dated back to at least 1999 under a different head of surgery, Dr. Weiss. Subsequently, in 2002, the surgical faculty, not Dr. Kostin, considered appointing Ray to the residency faculty but decided against because of QA concerns. Moreover, Pinnacle showed that it had other Asians on the residency faculty including physicians from Pakistan and the Philippines. In short, Ray failed to carry his burden to raise an inference of racial discrimination on this claim.

### 2. Failure to Provide Information to the Carlisle Hospital

Ray offers nothing beyond his personal belief in support of his claim that Pinnacle failed to provide information to the Carlisle Hospital because he was of Indian descent. This is insufficient to carry his burden, particularly in light of undisputed documentary and testimonial evidence that Pinnacle did provide all of the information Carlisle originally sought.

## IV. Rule 62.1 Denial

16

Rule 62.1 allows a trial court to take certain action on a motion for relief when an appeal has been docketed and is pending. The court may:

(1)     defer considering the motion;
(2)     deny the motion; or
(3)     state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue. Rule 62.1(a).

Here, the District Court decided that the motion did not raise a substantial issue. We agree and cannot say the Court abused its discretion in denying the Rule 62.1 motion.

## V. Conclusion

In light of the foregoing, the District Court properly granted Pinnacle's motion for summary judgment on all Ray's claims and properly denied his Rule 62.1 motion. The orders appealed from will be affirmed.

17