**Opinions of the United States Court of Appeals for the Third Circuit**



9-13-2005

# McDowell v. Phila Housing Auth

Precedential or Non-Precedential: Precedential

Docket No. 04-2609

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"McDowell v. Phila Housing Auth" (2005). *2005 Decisions.* Paper 479.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/479

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-2609

JACKIE McDOWELL, et al.

v.

PHILADELPHIA HOUSING AUTHORITY (PHA);
JOHN WHITE; BARRY MILLER

Jackie McDowell and the certified
class whom she represents,

Appellant

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

District Court No. 97-cv-02302
District Judge: The Honorable John P. Fullam

Argued May 27, 2005

Before:  SCIRICA, Chief Judge, ALITO and GARTH, Circuit
Judges

(Filed: September 13, 2005)

PAUL A. BROOKS (Argued)
GEORGE GOULD
Community Legal Services, Inc.
1424 Chestnut Street

Philadelphia, Pennsylvania 19102

*Counsel for Appellants*

ALAN C. KESSLER
ABBE F. FLETMAN (Argued)
STEPHANIE L. KOSTA
Wolf, Block, Schorr and Solis-Cohen LLP
1650 Arch Street, 22d Floor
Philadelphia, Pennsylvania 19103

*Counsel for Appellees*

---

OPINION OF THE COURT

---

ALITO, <u>Circuit Judge</u>:

This case requires us to construe a consent decree. The appellants, a class of tenants living in Philadelphia public housing, moved the District Court to enforce the decree and to cite the Philadelphia Housing Authority and two of its employees (together, the "PHA") for civil contempt. The tenants alleged that the PHA had violated the decree by failing to factor rising gas rates into allowances they were entitled to receive for their gas bills. The District Court denied the motion initially and on reconsideration, concluding that the tenants could not show any actual provable injury as a result of the PHA's violations. It reasoned that the PHA could offset its arrears by retroactively reducing the tenants' allowances in light of evidence that tenant gas consumption during the period of the violations had been overstated.

We disagree with this reasoning. The plain text of the decree and applicable federal regulations do not permit the PHA to revise the tenants' allowances retroactively to correct for historically overstated consumption. The tenants were entitled to recover in the form of sanctions the difference between the allowances they received and the allowances they should have received based on the consumption factor then in effect. The

2

District Court erred in calculating their loss based on the PHA's revised figures, and its order denying their motion is vacated.

## I.

This case has its genesis in an April 1997 lawsuit filed against the PHA by Jackie McDowell, a tenant in Philadelphia's public housing system. The suit was brought in federal court pursuant to 42 U.S.C. § 1983. McDowell's complaint alleged that the PHA had deprived her of her federal rights by failing to factor rising gas rates into the gas allowances she was entitled to receive under the United States Housing Act of 1937, 42 U.S.C. § 1437 et seq. McDowell sought relief for herself and for similarly situated tenants who were allegedly owed allowances by the PHA. The plaintiff class was certified in May 1997.

To understand the plaintiffs' claims, some exposition of the Housing Act and its accompanying regulations is necessary. Under section 3(a)(1)(A) of the Act, as amended, a public housing authority ordinarily may not require a tenant family to pay more than 30% of its monthly adjusted income as rent. 42 U.S.C. § 1437a(a)(1)(A). Since the Department of Housing and Urban Development ("HUD") has interpreted "rent" to include the reasonable cost of utilities, see, e.g., Tenant Allowances for Utilities, 49 Fed. Reg. 31,399, 31,400 (Aug. 7, 1984); Wright v. Roanoke Redevelopment & Hous. Auth., 479 U.S. 418, 420 (1987), housing authorities must issue rebates to tenants who purchase service directly from a utility company. See West v. Sullivan, 973 F.2d 179, 182 (3d Cir. 1992); West v. Bowen, 879 F.2d 1122, 1129 (3d Cir. 1989).

These rebates take the form of monthly allowances credited toward the tenant's rent. See 24 C.F.R. § 965.504(b). The amount of the allowance is calculated "to approximate a reasonable consumption of utilities by an energy-conservative household of modest circumstances consistent with the requirements of a safe, sanitary, and healthful living environment." Id. § 965.505(a). Separate allowances are calculated for each utility based on the utility company's rates and a consumption factor that takes account of the climate in which the housing is located, the size of the

3

dwelling units, and other relevant circumstances. Id. §§ 965.505(d), 965.507(a). If a tenant's utility bill exceeds the allowance, the tenant must make up the difference; if the allowance exceeds the bill, the difference may be pocketed. See West v. Bowen, 879 F.2d at 1129 & n.8.

In January 1998, the parties agreed to settle McDowell's lawsuit. The stipulation of settlement read in pertinent part:

> 6. PHA shall, commencing with 1997, review, at least annually, the basis on which utility allowances have been established and, if reasonably required, shall establish revised allowances.
>
> 7. The annual review shall include all changes in circumstances indicating probability of a significant change in reasonable consumption requirements and changes in utility rates.
>
> 8. PHA may revise its allowances for resident-purchased utilities between annual reviews if there is a rate change except that PHA shall revise its allowances for resident-purchased utilities between annual [reviews] if any change in utility rates, by itself or together with prior rate changes not adjusted for, results in a change of 10 percent or more from the rates on which the allowances were based.
>
> 9. Adjustments to utility allowances shall be retroactive to the first day of the month following the month in which the last rate change taken into account in such revision became effective.

App. at 25. The terms of the settlement were incorporated into a consent decree, which provided that the District Court would retain continuing jurisdiction over the administration and enforcement of the parties' agreement. Id. at 29.

On December 1, 2000, after three years of stability in gas prices, the Philadelphia Gas Works ("PGW") raised the tenants'

4

rates by approximately 11%. A month later, it raised them again. The PHA's own data show that the tenants' rates exceeded the baseline rate at the time the decree was entered by at least 10% during all but two months of the 25-month period from December 2000 through December 2002. Despite receiving several letters from the tenants' counsel urging it to revise the gas allowances, the PHA took no action on the rate hikes. The PHA frankly admits that it "fell out of compliance" with the decree during this period. PHA's Br. at 5.

On October 30, 2002, the tenants filed a motion to enforce the consent decree and to cite the PHA for civil contempt. Under a settlement reached in December 2002, the PHA agreed to increase the tenants' gas allowances effective January 1, 2003. The adjustment was not retroactive, however, and the parties' agreement expressly left unresolved whether the tenants were entitled to sanctions for the period of noncompliance from November 2000 through December 2002. The District Court fixed a briefing schedule to resolve this issue and heard oral argument on it in July 2003.

The Court denied the tenants' motion in an unpublished order dated March 9, 2004. It found that the tenants had "not suffered any actual provable injury as a result of any failure of PHA to comply with the Consent Decree prior to January 1, 2003." App. at 536. This finding was based on "[r]evised gas consumption calculations for the period July 1, 1999, through December 31, 2002," which showed that the overstatement of gas consumption during this period equaled or exceeded the shortfalls in the allowances due to the higher rates. Id. The revised calculations were provided by Sud Associates, P.A. ("Sud"), a consulting firm retained by the PHA.

The tenants moved for reconsideration under Federal Rule of Civil Procedure 59(e). In addition to challenging the District Court's construction of the consent decree, they argued that the Court should have afforded them discovery of Sud's data and an evidentiary hearing to contest its findings. The Court denied the motion on May 6, 2004, and the tenants timely appealed on June 4 of that year, raising the same claims rejected on their motion for

reconsideration.

## II.

The denial of a motion for reconsideration is reviewed for abuse of discretion. See N. River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1203 (3d Cir. 1995). This standard of review also applies to the underlying decision to deny the motion to enforce the consent decree. See Holland v. N.J. Dep't of Corrs., 246 F.3d 267, 281 (3d Cir. 2001); Harris v. City of Philadelphia, 47 F.3d 1342, 1349 (3d Cir. 1995). An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact. Chiang v. Veneman, 385 F.3d 256, 264 (3d Cir. 2004).

The proper construction of the consent decree is a question of law that receives plenary review. See Holland, 246 F.3d at 270; Sansom Comm. ex rel. Cook v. Lynn, 735 F.2d 1535, 1539 (3d Cir. 1984). The decision to deny the tenants discovery and an evidentiary hearing is reviewed for abuse of discretion. See United States v. Hedaithy, 392 F.3d 580, 605 (3d Cir. 2004); United States v. Albinson, 356 F.3d 278, 281 & n.5 (3d Cir. 2004). Under these standards, vacatur may be required if the District Court denied the tenants' motions based on a misconstruction of the decree or if it abused its discretion in denying them discovery and an evidentiary hearing. We discuss these claims in turn.

## III.

Since a consent decree issued upon the stipulation of the parties has the characteristics of a contract, contract principles govern its construction. See Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004); United States v. New Jersey, 194 F.3d 426, 430 (3d Cir. 1999). One of these principles is that an unambiguous agreement should be enforced according to its terms. See United States v. New Jersey, 194 F.3d at 430 (citing Fox v. U.S. Dep't of Hous. & Urban Dev., 680 F.2d 315, 319-20 (3d Cir. 1982)). Whether the decree is unambiguous is a question of law that the Court decides by considering whether, "from an objective standpoint, [the decree] is reasonably susceptible to at least two

different interpretations." <u>Id.</u> (citing <u>Hullett v. Towers, Perrin, Forster & Crosby, Inc.</u>, 38 F.3d 107, 111 (3d Cir. 1994)).

If the decree is ambiguous, the Court may look to extrinsic evidence of its meaning, <u>see</u> <u>Thermice Corp. v. Vistron Corp.</u>, 832 F.2d 248, 252 (3d Cir. 1987), but ambiguities that persist must be construed against the party seeking enforcement. <u>See</u> <u>Harris</u>, 47 F.3d at 1350; <u>accord</u> <u>FTC v. Kuykendall</u>, 371 F.3d 745, 760-61 (10th Cir. 2004). This rule avoids imposing obligations on the parties that they did not bargain for, and it ensures that a party has fair notice of what the decree requires before the serious sanction of contempt is invoked. <u>See</u> <u>United States v. Armour & Co.</u>, 402 U.S. 673, 681-82 (1971); <u>Harris</u>, 47 F.3d at 1350.

There can be no doubt that the consent decree obligated the PHA to revise its gas allowances after the rate changes at issue here. This duty emerges unambiguously from the plain text of paragraph 8 of the decree, and the PHA does not deny that this duty was breached. The interpretive question we must answer is how the consent decree permitted the PHA to remedy this breach. The PHA argues that the decree permitted it to offset the shortfall in the allowances the tenants received by revising estimates of tenant gas consumption during the period when the violations were occurring. The tenants argue that the PHA may not offset its sanctions in this manner because the decree does not permit it to adjust the tenants' allowances retroactively based on revised consumption data.

We agree with the tenants. The only paragraph of the decree that discusses consumption is paragraph 7, which permits the PHA, in the course of an annual review, to consider "all changes in circumstances indicating probability of a significant change in reasonable consumption requirements." App. at 25. The word "probability" plainly indicates that the focus of the review is to be prospective. Although paragraph 9 arguably gives limited retroactive effect to some revisions based on consumption changes, it does not follow that the revisions may be retrospective. The unambiguous language of paragraph 7 indicates that revisions must correct for "probab[le]" changes in consumption, not for past consumption levels that, in retrospect, were overstated.

7

Paragraph 8 discusses retrospective adjustments but does not mention consumption. It permits (and in some cases requires) an adjustment "if there is a rate change." Id. In light of the language of paragraph 7, which mentions both rate and consumption changes, the omission of consumption in paragraph 8 is a significant one. A reading of the decree in its entirety, aided by a straightforward application of the expressio unius canon, compels the conclusion that the PHA may not revise the tenants' allowances retroactively to correct for historic overestimates of gas consumption.

This view is buttressed by HUD regulations whose language the consent decree tracks. Under 24 C.F.R. § 965.502(c), the PHA must give at least 60 days' notice to all tenants before the "proposed effective date" of an adjustment to their allowances. Section 965.507(b) carves out an exception to the notice requirement for adjustments based on rate changes of 10% or more but does not mention adjustments based on consumption changes. Id. § 965.507(b). Adjustments based on consumption changes thus remain subject to § 965.502(c)'s notice requirement. Since such an adjustment may not take effect until 60 days after the tenants have received notice, retroactive adjustments are plainly forbidden under the regulations.

The District Court disregarded the regulations, believing that the tenants' motion should be decided solely on the consent decree, which contains no notice requirement. It is true that a consent decree should be "construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in litigation." Armour & Co., 402 U.S. at 682. Because the decree compromises litigation, it will rarely afford the plaintiffs all the relief they would have obtained had the case proceeded to a judgment in their favor. See id. at 681; Harris, 47 F.3d at 1350. Ordinarily, therefore, a court should confine its interpretation to the four corners of the decree and not try to divine its meaning from speculation about the purposes of the parties or the background legal regime. See United States v. Atl. Ref. Co., 360 U.S. 19, 23 (1959); Hughes v. United States, 342 U.S. 353, 357 (1952).

8

Notwithstanding these principles, the Supreme Court has indicated that relevant statutes and regulations may sometimes be used to shed light on the terms of a consent decree. See United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238, 240-41 (1975). The Court in ITT Continental Baking Co. looked to section 7 of the Clayton Act, 15 U.S.C. § 18, to help gloss the words "acquire" and "acquisition" in an antitrust consent decree. 420 U.S. at 240-41. The Court defended its reliance on this extrinsic evidence on two grounds. First, the gloss supplied by the statute simply confirmed the meaning that emerged naturally from the decree's terms. See id. at 235. Second, the extrinsic evidence was being used to determine not whether the decree had been violated but what the appropriate sanction for the violation was. See id. at 237. Since the contemnor had clearly breached some duty under the decree, there was no danger that he would be sanctioned for contempt without fair notice of his obligations. See id.

These rationales apply equally here. As we noted earlier, the PHA concedes that it was in violation of the Court's order. It disputes only the amount of the sanction. In resolving this dispute, we may construe the decree "basically as a contract," and "reliance on certain aids to construction is proper, as with any other contract." Id. at 238; see also United States v. New Jersey, 194 F.3d at 430 (permitting the use of extrinsic evidence to interpret a decree); Thermice Corp., 832 F.2d at 252 (same). For the reasons set forth earlier, we believe the plain language of the decree did not permit the PHA to offset its arrears by revising estimates of tenant consumption. To the extent that any doubt remains about the meaning of the decree, the regulations clearly resolve it in the tenants' favor. In this respect, the regulations do not guide our interpretation so much as confirm it.

The PHA submits that it was required to retroactively revise the allowances because § 1437a(a)(1) does not allow tenants to pay less than 30% of their monthly adjusted income in rent. The PHA points to dicta in Wright v. Roanoke Redevelopment & Housing Authority, in which the Supreme Court explained that § 1437a permits a housing authority to charge "no more and no less than 30 percent" of a tenant's income as rent. 479 U.S. 418, 430 (1987). According to the PHA, many tenants will end up paying less than

30 percent of their income in rent if allowances based on inflated consumption estimates are left uncorrected.

Even if the language on which the PHA relies were binding, it could not support the PHA's argument. In 1998, over a decade after Wright was decided, Congress rewrote § 1437a(a)(2) and added the following language:

> The monthly rental amount determined under this clause for a family shall be an amount, determined by the public housing agency, that does not exceed the greatest of the amounts (rounded to the nearest dollar) determined under subparagraphs (A), (B), and (C) of paragraph (1). This clause may not be construed to require a public housing agency to charge a monthly rent in the maximum amount permitted under this clause.

Quality Housing and Work Responsibility Act of 1998, Pub. L. No. 105-276, § 523, 112 Stat. 2518, 2566 (codified at 42 U.S.C. § 1437a(a)(2)(B)(i)(II)) (emphasis added). The amendment takes pains to ensure that the amounts set forth in § 1437a(a)(1) are not construed as minimum rents. Once this putative rent floor is removed, the PHA's argument has nothing left to stand on.

There is consequently no merit to the District Court's conclusion that the tenants failed to show "actual provable injury" resulting from the PHA's violations. The sanction imposed on a civil contemnor for his past conduct may not exceed the actual damages caused by his violation of the court's order. See Gregory v. Depte, 896 F.2d 31, 34 (3d Cir. 1990) (citing Quinter v. Volkswagen of Am., 676 F.2d 969 (3d Cir. 1982)). It does not follow, however, that the tenants' actual consumption of gas is the baseline from which their damages should be measured. As this Court explained years ago in National Drying Machinery Co. v. Ackoff, the offended party's rights under the decree set the baseline for calculating his loss:

> Whether an award in civil contempt be measured in terms of a plaintiff's loss or a defendant's profit,

10

such an award, by very definition, must be an attempt to compensate plaintiff for the amount he is out-of-pocket or for what defendant by his wrong may be said to have diverted from the plaintiff or gained at plaintiff's expense.

245 F.2d 192, 194 (3d Cir. 1957); see also Quinter, 676 F.2d at 975 ("[I]n civil contempt proceedings enforcement of the rights and remedies of a litigant is the ultimate object."); cf. Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 455-56 (1932) (permitting the recovery of profits from a patent infringement in violation of a court order even though the patentee could not show damages resulting from the infringement).

For the reasons set forth above, the consent decree permitted the PHA to revise estimates of tenant consumption prospectively only. When PGW raised its rates, the tenants were entitled under paragraph 8 of the decree to have their allowances recalculated based on the increased rates and the consumption factor in effect at the time. The difference between the allowances so calculated and the allowances the tenants received is the loss the tenants suffered and the benefit the PHA reaped as a result of the latter's contempt. This is the tenants' actual provable injury.

IV.

Because we conclude that the consent decree did not permit the PHA to offset a shortfall in the tenants' allowances with revised estimates of tenant gas consumption, we need not consider the tenants' alternative argument that they were wrongfully denied discovery and an evidentiary hearing to contest the revisions. The order of the District Court denying the tenants' motion for reconsideration is accordingly vacated. On remand, the tenants' motion to cite the PHA for civil contempt shall be granted, and an appropriate sanction shall be calculated in the manner described above.