OPINION OF THE COURT
JORDAN, Circuit Judge.
Raymond Calvitti appeals orders of the United States District Court for the Eastern District of Pennsylvania dismissing his complaint against Anthony & Sylvan Pools Corporation (“A & S”) and an affiliated trust and trustee. Because Calvitti entered into an unambiguous agreement releasing those parties from any claim, we will affirm.
1. Background
Calvitti served as the President of KDI Sylvan Pools, Inc. (“KDI”), the predecessor in interest to A & S.[1] On April 12, 1993, KDI created a Supplemental Retirement Plan (the “Plan”) designed to “reward Raymond J. Calvitti ... for his loyal and continuous service to the Company by providing supplemental retirement benefits.” (App.31.) As part of the Plan, KDI created a trust (the “Trust”) and agreed to make periodic contributions to it. The Plan stated that when Calvitti reached the age of 65 and was no longer working for KDI, the Company would “pay him an amount equal to the fair market value of the assets in the Trust as of such date.” (App.32.)
Under the Plan, Calvitti’s benefits were to be paid from KDI’s assets, not the Trust.[2] The Trust served only as a meas *653 uring stick for the amount Calvitti was due under the Plan. The Trust Agreement further emphasized that Calvitti did not have any claim to, or interest in, the assets in the Trust.[3]
In October 1995, KDI terminated Calvit-ti for cause. The following month, Calvitti and KDI entered into an “Agreement and Release” (the “Agreement”) designed to resolve all issues and disputes between them and sever their relationship amicably. In the Agreement, KDI agreed to (1) waive all claims it had against Calvitti as a result of his misconduct;[4] (2) pay Calvitti a lump sum of $33,333.33; (3) pay Calvitti $3,846.15 per week from October 30, 1995 to June 30, 1996 (roughly $134,000); and (4) pay Calvitti’s health insurance expenses through June 30,1996. (App.86-89.)
In return, Calvitti agreed to release KDI and its affiliated entities from any claims he may have had against them. The release provides as follows:
For and in consideration of the monies and Benefits paid to EMPLOYEE [Cal-vitti] by EMPLOYER [KDI], ... and for other good and valuable consideration, EMPLOYEE hereby waives, releases and forever discharges EMPLOYER ... and the Supplemental Retirement Plan of KDI Pools, Inc., their assigns, predecessors, successors, trustees, and affiliated entities ... from any and all claims, suits, debts, dues, accounts, ... contracts, ... agreements, promises, claims, ... or causes of action of any kind or nature whether in law or equity, ... including, but not limited to ... claims arising under ... the Employment Retirement Income Security Act of 1974 (ERISA) ... and any and all other claims arising under federal, state or local law ... whether known or unknown; provided, however that parties do not release each other from any claim of breach of the terms of this Agreement and Release.
(App. 87-88 (emphasis in original).) By its terms, the Agreement specifically released KDI and its successors and affiliated entities from claims brought under ERISA.
Another section of the Agreement stated that KDI would have no further obligation to make any additional contributions to the Trust.[5] The Agreement also contained a *654 provision advising Calvitti to consult an attorney, stating that he had been given 21 days to consider the Agreement, and giving him seven days to rescind the Agreement after signing it. (App.91.)
On August 2, 1996, after KDI had fully performed under the Agreement, Calvitti, who had not yet reached the age of 65, requested that KDI pay him the sums held in the Trust. KDI’s attorney responded simply that KDI had “determined to continue administration of the Plan according to its terms.” (App.59.) In 2007, Calvitti turned 65 and again requested the sums held in the Trust. Calvitti’s request was denied, and he filed suit in the United States District Court for the Eastern District of Pennsylvania, alleging violations of ERISA and various common law claims. The complaint was later amended to add the Trust and Trustee as defendants.
KDI filed a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Calvitti’s First Amended Complaint for failure to state a claim. In an order dated June 2, 2008, the District Court granted the motion, finding that Calvitti had unambiguously released all his claims — -including ERISA claims — against KDI. The Court noted that, in fighting dismissal of his complaint, Calvitti had limited his arguments to the interpretation of the Agreement and had not challenged whether the Agreement was entered into knowingly and voluntarily. The Court also held that Calvitti’s common law claims were preempted by ERISA.
On June 9, 2008, the Trust and Trustee filed a motion to dismiss, which the Court granted on June 24. Calvitti separately appealed the District Court’s orders dismissing his claims against KDI and the Trust and Trustee, and his appeals have been consolidated for disposition. On appeal, he argues that he did not relinquish his claims to the money held in the Trust.
II. Discussion[6]
We review de novo the District Court’s decision to grant a motion to dismiss. Phillips v. County of Allegheny, 515 F.3d 224, 230 (3d Cir.2008). In deciding a motion to dismiss under Rule 12(b)(6), a trial court must “accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.” Id. at 233 (quotation omitted).
We apply federal law to the interpretation of contracts affecting ERISA benefits. Moráis v. Cent. Beverage Corp. Union Employees’ Supplemental Retirement Plan, 167 F.3d 709, 711 (1st Cir. 1999); see also Fisher Dev. Co. v. Boise Cascade Corp., 37 F.3d 104, 108 (3d Cir. 1994) (citation omitted) (“It is, of course, well settled that federal law governs issues relating to the validity of a release of a federal cause of action.”). That law includes the general contract principle that “an unambiguous agreement should be enforced according to its terms.” McDowell v. Phila. Housing Auth., 423 F.3d 233, 238 (3d Cir.2005). Whether an agreement is ambiguous is a question of law for the court to decide after considering whether, from an objective standpoint, the agreement is reasonably susceptible to at least two different interpretations. See id. In making that determination, the court should consider the language of the agree *655 ment, the interpretations suggested by the parties, and the extrinsic evidence offered in support of each interpretation. Fin-horn v. Fleming Foods of Pa., Inc., 258 F.3d 192, 194-95 (3d Cir.2001). Although we consider extrinsic evidence to determine whether a contract is ambiguous, “[i]n no event may extrinsic evidence be employed to contradict explicit contract language or to drain an agreement’s text of all content save ink and paper.” Smart v. Gillette Co. Long Term Disability Plan, 70 F.3d 173, 180 (1st Cir.1995).
The contract language at issue is, again, as follows:
“EMPLOYEE [Calvitti] hereby waives, releases and forever discharges ... [KDI], ... the Supplemental Retirement Plan of [KDI], their assigns, predecessors, successors, trustees, and affiliated entities ... from any and all claims, suits, debts, dues, accounts, ... charges, complaints, damages, sums of money ... or causes of action of any kind ... including but not limited to ... claims arising under the Employee Retirement Income Security Act of 1974 (ERISA)....”
(App.87-88.)
Not surprisingly, the parties suggest very different meanings for the Agreement’s language. The Appellees contend that Calvitti waived all his claims against them, including claims brought under ERISA for proceeds from the Plan. Calvit-ti, on the other hand, asserts that the Agreement does not affect his right to the assets set out in the Plan. In support of his position, he observes that the Agreement also releases KDI from continuing to make payments into the Trust and maintains that such a release would be unnecessary if he no longer had a claim to the assets in the Trust.
He also avers that extrinsic evidence supports his reading of the Agreement. Calvitti alleges that after the effective date of the Agreement, KDI made an additional contribution to the Trust of a sum that had accrued before the Agreement was entered. He argues that KDI had no reason to make that contribution if he had released his interest in the Trust and the assets in the Trust had reverted back to KDI. Calvitti also contends that when he requested the assets in the Trust before turning 65, KDI responded with a letter stating that the Plan would continue to be administered according to its terms. He argues that if, under the Agreement, he had released his right to the assets in the Trust and they had reverted back to KDI, then KDI would have said so in its letter. Instead, Calvitti argues, KDI responded in a manner consistent with his claim that he did not release his right to the assets in the Trust.
Despite Calvitti’s attempts to add ambiguity, we conclude that the language of the Agreement clearly supports the interpretation advanced by KDI, the Trust, and the Trustee. Calvitti expressly released KDI, the Plan, and their affiliated entities, which includes the Trust and Trustee, from all claims, including specifically ERISA claims. The provision releasing KDI from its obligation to continue funding the Trust is simply the type of belt-and-suspenders provision that has become common in modern contracts and does not change the unambiguous nature of the release. Likewise, the extrinsic evidence presented by Calvitti does not infuse ambiguity into the clear language of the Agreement. KDI’s post-agreement contribution to the Trust was a single event, probably no more than a mistake but certainly not a course of performance. It does not call into question the clearly expressed release. Similarly, KDI’s letter stating that the Plan would continue to be administered according to its terms, while not a model of clarity, does not imply that *656 Calvitti had any further interest in Plan proceeds or any interest at all in the Trust.
In language as plain as can be, both the Plan and Trust Agreement state that Cal-vitti never had any interest in, or right to, the assets in the Trust. His claims to Plan proceeds were against KDI, and he waived all his claims when he signed the Agreement.
III. Conclusion
Calvitti specifically waived any and all claims, including ERISA claims, against KDI, the Plan, and their affiliated entities. The Agreement cannot be reasonably interpreted otherwise. Accordingly, we will affirm the District Court’s orders dismissing Calvitti’s claims.

. For ease of reference, appellee A & S is referred to hereafter by the name of its predecessor in interest, KDI.

. Sections 15 and 16 of the Plan read as follows:
15. All benefits to be provided pursuant to this Plan are general, unfunded obligations *653 of the Company. Neither Employee nor his beneficiary will have any interest in any specific asset of the Company as a result of this Plan.
16. Benefits under this Plan will be paid from the general assets of the Company. The assets of the Trust shall not, under any circumstances, be deemed to be an asset of this Plan, but at all times shall remain a part of the general assets of the Company, subject to claims of the Company's general creditors.
(App.34.)

.Section 1(d) of the Trust Agreement reads as follows: "... Plan participant and his benefi-ciaiy shall have no preferred claim on, or any beneficial ownership interest in, any assets of the Trust. All rights created under the Plan and this Trust Agreement shall be mere unsecured contractual rights of the Plan participant and his beneficiary against Company.. -(App.37.)

. Attachment 1 to the Agreement is a list of actions for which KDI might have had claims against Calvitti, including (1) defalcation of an amount in excess of $60,000; (2) awarding improper referral bonuses; (3) non-business related distribution of sports tickets paid for by KDI; (4) payment of non-business related dues, fees, and other country club expenses with KDI funds; (5) payment of non-business related expenses for golf trips, green fees, and dinners with KDI funds; (6) improper use of KDI employees, materials, and equipment for personal projects; and (7) improper use of KDI equipment and employees for the benefit of a related company. Presumably, the listed actions are also the reasons that Calvitti was fired.

. Subsection (5) of the Agreement states: "It is agreed that EMPLOYER shall have no obligation to make any additional contributions to the Trust established pursuant to the Sup *654 plemental Retirement Plan of KDI Pools, Inc.” (App.87.)

. The District Court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.