**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3166
_____

JASON KOKINDA,
                              Appellant

v.

PENNSYLVANIA DEPARTMENT OF CORRECTIONS;
C/O PEGRAM, (official/personal capacity); SHELLEY MANKEY, (official/personal
capacity); SUSAN COWAN, (official/personal capacity); MR. GEEHRING, (Mailroom
Staff) (official/personal capacity); JOHN DOE #1 (Lt. Haurenbaugh?) (official/personal
capacity)
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 16-cv-01580)
District Judge:  Honorable Mark R. Hornak
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 5, 2018

Before:  GREENAWAY, JR., BIBAS and ROTH, Circuit Judges

(Opinion filed: June 24, 2019)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Appellant, Jason Kokinda, appeals from the District Court's order dismissing his civil action. We will affirm the District Court's judgment.

Kokinda, formerly a prisoner at the State Correctional Institution in Waynesburg, Pennsylvania ("SCI-Greene"), filed a civil rights complaint pursuant to 42 U.S.C. §§ 1983, 1985(3) and 1986, as well as Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132. Named as defendants were the Pennsylvania Department of Corrections ("DOC"), Corrections Officer Pegram, Unit Managers Shelley Mankey and Susan Cowan, mailroom staffer Mr. Geehring, and "John Doe #1/Lieutenant Haurenbaugh." Defendants were sued in their official and individual capacities. Kokinda alleged that defendants violated his First, Eighth, and Fourteenth Amendment rights by showing "deliberate indifference" to the "severe psychological trauma" they caused him to experience while he was housed on the mental health block at SCI-Greene, and by engaging in retaliation and a civil conspiracy.

We only briefly summarize the allegations of Kokinda's complaint here as the Magistrate Judge ("MJ") to whom the action was referred issued a Report and Recommendation ("R&R") that sets them forth in detail. See R&R at 2-4. Kokinda basically asserts that, beginning in October 2014, Officer Pegram began a "form of sexual grooming" that served to gratify what Kokinda supposed were Pegram's homosexual desires. See Compl. at ¶ 1. Kokinda claimed that Pegram deliberately stared at his "groin area for an uncomfortable duration" and with "too much interest." Id. at ¶¶ 1-2. As a result of Pegram's actions, Kokinda experienced "severe psychological

2

trauma." Id. at ¶ 6. As a "coping mechanism," Kokinda became "delusional" and formed the belief that Pegram and other prison staff were "trying to ensure that he was 'sexually/psychologically impotent' as a security measure." Id. at ¶ 15. According to Kokinda, he "became extremely paranoid that they were retaliating against him for showing any signs of sexual desire, by coming in his cell and dosing even his commissary with . . . salt peter and/or androgens." Id. at ¶ 16. All of this – when combined with his obsessive compulsive disorder – resulted in Kokinda developing a "hypothetical theory" that prison staff members "were testing his sexual capacity; seeking to neuter him mentally and physically, for not assimilating like the other institutionalized inmates." Id. at ¶¶ 16, 18.

Kokinda faults Unit Managers Mankey and Cowan for not favorably responding to his grievance and request slip seeking to be transferred to another block. See id. at ¶¶ 9-10. He also "infers" that defendant Geehring was doing Pegram a favor by throwing out a letter he wrote to the "Prison Rape Elimination Act board, seeking an investigation and relief from the conditions of his cruel and unusual punishment . . . ." Id. at ¶ 11. Kokinda notes, however, that the grievance packet and letter were resent and ultimately received by the Prison Rape Elimination Act Board. An investigation ensued. While Kokinda was apparently called down to "Strip & Search" to discuss the incident, John Doe #1/Lieutenant Haurenbaugh did nothing to assist him. Id. at ¶ 12. As a result of his grievance against Pegram, Kokinda claims to have suffered "many retaliations" from

3

staff members, who put him "under the microscope, nit-picking his every word, trying to find some semi-legitimate covering to harm him at all times." Id. at ¶ 13.

Defendants responded to Kokinda's allegations by filing a motion to dismiss for failure to state a claim for which relief could be granted. The MJ issued the R&R recommending that defendants' motion be granted and that Kokinda's complaint be dismissed. Over Kokinda's objections and after de novo review, the District Court adopted the R&R as modified by its own opinion, granted defendants' motion, and dismissed the complaint with prejudice. The District Court subsequently denied Kokinda's motion for reconsideration filed pursuant to Fed. R. Civ. P. 59(e). This timely appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review of a District Court's decision to grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1] Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009). "[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiff[], and all inferences must be drawn in favor of [him]." McTernan v. City of York, 577 F.3d 521, 526 (3d Cir. 2009) (internal citation

---

[1] Kokinda did not mention the District Court's order denying his reconsideration motion in his notice of appeal and he has raised no arguments addressed to that order in his appellate brief. We thus do not consider that order within the scope of this appeal. Even if we were to liberally construe the notice of appeal to include the order, see Pacitti v. Macy's, 193 F.3d 766, 776 (3d Cir. 1999), we would find no abuse of discretion on the part of the District Court as the motion did not satisfy any of the grounds required for reconsideration. See McDowell v. Phila. Hous. Auth., 423 F.3d 233, 238 (3d Cir. 2005).

4

omitted). To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As did the District Court, we construe Kokinda's pro se pleadings liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam).

The District Court properly concluded that Kokinda's claimed violations of §§ 1983, 1985(3), and 1986 against the DOC and the individual prison staff members sued in their official capacities are barred by the Eleventh Amendment. See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002). Additionally, Kokinda failed to state a claim under 42 U.S.C. § 1985(3) because he did not allege discrimination on account of his race or any other class-based ground for animus. See Griffin v. Breckenridge, 403 U.S 88, 102 (1971) (requiring racial or "otherwise class-based, invidiously discriminatory animus"); cf. Abdul-Akbar v. McKelvie, 239 F.3d 307, 317 (3d Cir. 2001) (en banc) (neither prisoners nor indigents are suspect classes for Fourteenth Amendment equal protection purposes). Moreover, he has arguably failed to allege sufficient facts from which one could infer an agreement or understanding among the defendants to deprive him of the equal protection of the laws, or to elevate his allegations of conspiracy to a level that is plausible rather than merely conceivable. See Bell Atl. Corp., 550 U.S. at 570. This claim, like so many of Kokinda's other claims, is conclusory and does "not appear to be based in fact, but merely upon his own suspicion or speculation," as Kokinda himself appears to acknowledge. See Young v. Kann, 926

5

F.2d 1396, 1405 n.16 (3d Cir. 1991); see also D.R. by L.R. v. Middle Bucks Area Vocational Tech. Sch., 972 F.2d 1364, 1377 (3d Cir. 1992) (conclusory allegations are not sufficient to state a § 1985(3) claim).

Because Kokinda failed to state a viable claim under § 1985(3), his claim pursuant to 42 U.S.C. § 1986 necessarily fails. See Rogin v. Bensalem Twp., 616 F.2d 680, 696 (3d Cir. 1980). Kokinda's claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability. See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc); see also Koslow v. Pennsylvania, 302 F.3d 161, 178 (3d Cir. 2002) (noting that "there appears to be no individual liability for damages under Title I of the ADA").

For the reasons set forth in the Magistrate Judge's R&R at pages 7-8, the District Court was correct to dismiss the complaint as to defendants Mankey, Cowan, and Geehring given Kokinda's failure to sufficiently plead that they were personally involved in any alleged activity amounting to a constitutional violation. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). Kokinda's conclusory allegations of a conspiracy among defendants to "unconscionably obstruct[], ignore[], and help[] cover up and carry out collateral retaliations related to [his] report of psychological abuse," see Compl. at ¶ 26, do nothing to breathe life into an otherwise insufficient claim. See Fantone v. Latini, 780 F.3d 184, 191 (3d Cir. 2015) (a conspiracy claim depends on whether a constitutional violation occurred); see also Capogrosso v. Supreme Ct. of N.J.,

6

588 F.3d 180, 184 (3d Cir. 2009) (per curiam) (A conspiracy claim "must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal.").

The claims against defendant Pegram likewise fail. The Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted). It also "guarantees the right to be free from 'cruel and unusual punishments' while in custody." Ricks v. Shover, 891 F.3d 468, 473 (3d Cir. 2018) (quoting Whitley v. Albers, 475 U.S. 312, 318 (1986)). "A properly stated Eighth Amendment claim must allege a subjective and objective element. First, it must appear from the complaint that the defendant official acted with a 'sufficiently culpable state of mind.' Second, the conduct must have been objectively 'harmful enough,' or 'sufficiently serious' to violate the Constitution." Id. (internal citations omitted).

We recently held that the sexual abuse of a prisoner can violate the Constitution. Id. at 475. In agreement with one of our sister circuits, we concluded that even "a single incident of sexual abuse, if *sufficiently severe or serious*, may violate an inmate's Eighth Amendment rights no less than repetitive abusive conduct." Id. (quoting Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015) (emphasis added)). The test to determine whether a prisoner properly stated an Eighth Amendment sexual abuse claim will turn on an analysis of both a subjective and an objective component. "That is, the incident must be objectively, sufficiently intolerable and cruel, capable of causing harm, and the official

7

must have a culpable state of mind." Id. To determine whether the conduct at issue is cruel and unusual, courts must look beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976).

Kokinda alleges that Officer Pegram stared at his groin area on numerous occasions "for an uncomfortable duration" while Kokinda was wearing his boxers in his cell. See Compl. at ¶¶ 1-2. The District Court surveyed federal case law dealing with similar claims and specifically considered the present "societal standards of decency" before concluding that Kokinda's claim against Officer Pegram fell short of that required to state an Eighth Amendment claim. See Mem. Op. at 2-3. We agree. Officer Pegram's alleged actions of non-verbal, non-physical staring on several occasions were not sufficiently intolerable and cruel, and capable of causing harm such that Kokinda could satisfy the objective component of his claim. See Ricks, 891 F.3d at 475; see also Somers v. Thurman, 109 F.3d 614, 624 (9th Cir. 1997) ("To hold that gawking, pointing, and joking [by guards during inmates' visual searches and showers] violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment and render it absurd."). The District Court thus committed no error in concluding that the incidents alleged by Kokinda did not "state the

8

requisite level of severity to make out an Eighth Amendment claim." See Mem. Op. at 3.[2]

We dispose of Kokinda's First Amendment claim with little discussion as the District Court properly concluded that he failed to sufficiently allege retaliatory conduct that caused him to suffer an adverse action. See Rauser v. Horn, 241 F.3d 330, 333-34 (3d Cir. 2001). Kokinda's complaint likewise falls woefully short of alleging a Fourteenth Amendment equal protection claim. See Phillips v. County of Allegheny, 515 F.3d 224, 245 (3d Cir. 2008). Finally, the District Court did not err in concluding that Kokinda's claim under Title II of the ADA against the DOC fails as a matter of law. To state a claim under Title II of the ADA, Kokinda must establish that: "(1) he is a qualified individual; (2) with a disability; (3) who was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was subjected to discrimination by any such entity; (4) by reason of his disability." Haberle v. Troxell, 885 F.3d 170, 178 (3d Cir. 2018) (brackets omitted); CG v. Pa. Dep't of Educ., 734 F.3d 229, 236 (3d Cir. 2013) ("To satisfy ... causation [under the ADA], Plaintiffs must prove that they were treated differently based on ... their disability."); see also 42 U.S.C. §

---

[2] We agree with appellees' contention that John Doe #1/Lt. Haurenbaugh was never served with the complaint, and thus is not properly a party to the action. In any event, the allegations against him, see Compl. at ¶ 12, fall far short of stating an Eighth Amendment violation.

12132. Nowhere does Kokinda assert that he was excluded from a program or service on account of or because of his disability as required.

We have considered Kokinda's remaining arguments and have determined that they are meritless. Moreover, under the circumstances of this case and given the additional allegations and arguments set forth in his briefs, we conclude that the District Court did not abuse its discretion in dismissing Kokinda's complaint without leave to amend. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002). Accordingly, we will affirm the District Court's order dismissing Kokinda's complaint with prejudice and without leave to amend.[3]

---

[3] Appellant's motion for leave to file a supplemental brief is denied. Appellees' request contained within the response to have the supplemental brief stricken is granted. The supplemental brief shall be stricken from the docket.