NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2542
_____

ESTATE OF DR. RICHARD LIEBERMAN

v.

PLAYA DULCE VIDA, S.A.,

Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 2-14-cv-03393)
District Judge:  Honorable Eduardo C. Robreno

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 17, 2023

Before:  SHWARTZ, MONTGOMERY-REEVES, and ROTH, *Circuit Judges*.

(Filed: January 18, 2024)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Montgomery-Reeves, *Circuit Judge*.

Playa Dulce Vida, S.A. ("PDV") challenges two rulings issued by the District Court and a jury verdict entered in favor of Appellee, the Estate of Dr. Richard Lieberman. In its first ruling, the District Court declared a mistrial to remedy potential prejudice caused by an earlier erroneous evidentiary ruling. In its second ruling, the District Court denied PDV's requests for post-trial relief from the jury verdict in favor of the Estate of Dr. Richard Lieberman. Because the District Court did not abuse its discretion in granting the mistrial and correctly held that the record evidence supported the jury's verdict, we will affirm.

## I. BACKGROUND[1]

In 2004, Dr. Richard Lieberman[2] purchased 25 preferred shares in a beachfront resort owned and operated by PDV. Lieberman and PDV memorialized Lieberman's purchase in a Preferred Shareholder Agreement (the "Shareholder Agreement"). The Shareholder Agreement contained four parts, each governing a different part of the transaction. Relevant here is the Rental Pool Agreement (the "Rental Agreement"). The Rental Agreement guaranteed Lieberman, among other things: (1) use of a resort unit 91 days per year, (2) certified accounting statements from PDV, and (3) a portion of PDV's net rental income. The Rental Agreement defines net rental income as the gross profits

---

[1] We write solely for the benefit of the parties and will only recite the facts necessary to resolve the issues before the Court.

[2] In 2021, Lieberman passed away, and his estate replaced him in the underlying action. We refer to both as Lieberman herein.

2

generated from the rental units minus certain expenses enumerated in the Rental Agreement.

In 2014, Lieberman sued PDV for, among other things, breach of contract. Lieberman alleged that in calculating the net rental income, PDV impermissibly deducted three categories of line items—debt service expenses, depreciation, and capital expenditures—which reduced the net rental income available for distribution (the "Rental Income Claim"). The complaint also alleged that PDV denied Lieberman access to and use of certain resort units. Lieberman sought monetary damages for the alleged breaches.

In preparing for trial, Lieberman did not retain an expert witness to testify about PDV's certified accounting statements or its calculation of net rental income. Instead, Lieberman planned to testify about the certified accounting statements and mathematical calculations therein. Anticipating Lieberman's testimony, PDV filed a motion in limine to preclude lay-witness testimony regarding PDV's certified accounting statements. In March 2018, the District Court issued an order denying in part and granting in part PDV's motion. The District Court granted the motion "to the extent that it [sought] to exclude opinion testimony concerning accounting practices, tax implications, or lawfulness under either American or Costa Rican law." J.A. 150. The District Court denied the motion "to the extent that [Lieberman would] . . . testify as to the accuracy of their arithmetic and whether these deductions were part and parcel of the contract that [Lieberman] had entered into with the [PDV]." *Id.*

In November 2019, the first trial commenced. During Lieberman's direct examination, PDV raised concerns about Lieberman's ability to provide a proper

3

evidentiary foundation for "complicated [financial] documents" prepared by a Costa Rican accounting firm. J.A. 189–90. Following PDV's objection, the District Court expressed concern that its prior ruling on PDV's motion in limine may have misled Lieberman to think that he did not need an expert witness. The District Court acknowledged that it had not fully appreciated the accounting related foundational questions that Lieberman would be asked before his testimony regarding the calculations. The District Court explained:

> The problem is that you're relying on a P and L, okay? And the question is -- and my analogy is let's assume that the P and L was in Russian and none of us spoke Russian, and then you asked Dr. Lieberman to tell us what the P and L says, we would need an interpreter. We would need a translator to translate what the P and L say[s] to lay language. It seems to me that's what the issue is here. It's not the ultimate opinion.

*Id.* at 229–30.

The District Court then engaged the parties in a detailed discussion of proposals to move forward. The District Court identified three proposals: (1) that Lieberman testify and, at the close of Lieberman's case, PDV move to strike statements inconsistent with the District Court's prior ruling; (2) that the trial proceed but that the District Court reopen discovery to allow Lieberman to retain an expert witness; and (3) that the District Court declare a mistrial to allow Lieberman to obtain an expert and reschedule a second trial sometime in the spring. After considering Lieberman's and PDV's concerns, the District Court granted a mistrial.

In November 2021, the District Court held a second trial. Lieberman had retained Stephen Scherf, a Certified Public Accountant, as an expert witness. Scherf performed a

forensic accounting of the rental income, based on PDV's certified accounting statements from November 2007 to September 2017. Scherf's testimony provided three scenarios; each calculation, except scenario one, assumed an increase in the value of the shares that Lieberman owned. Scenario one calculated $157,352 in damages; scenario two calculated $1,049,219 in damages; and scenario three calculated $735,484 in damages.

PDV's expert witness did not testify at trial. PDV's Corporate Representative, David Callan, however, testified that PDV deducted certain expenses from the gross rental income that were not enumerated in the Rental Agreement. Callan also testified that if Lieberman was successful in his lawsuit, PDV would issue a "call for capital" to all its shareholders, but that to date it had "found other solutions to make mortgage payments." J.A. 1348–49.

The jury returned a verdict in favor of Lieberman, awarding approximately $1.7 million in damages for the Rental Income Claim and $695,000 on the usage claim.

Post-trial, PDV sought judgment as a matter of law on three grounds: (1) there was no evidentiary support for the amount of damages awarded by the jury; (2) the jury's finding that PDV breached the Shareholder Agreement created an absurd result because if PDV paid Lieberman, PDV would default on its mortgage; and (3) Lieberman suffered no damages because all shareholders, including Lieberman, must cover the costs associated with litigation. The District Court held that there was no evidence to support the jury's calculation of damages for the usage Claim and reduced the award amount by $695,000. The District Court denied the remainder of PDV's request for relief.

PDV filed a timely appeal.

## II.   DISCUSSION[3]

This appeal requires the Court to resolve the following questions: (1) whether the District Court erred by granting a mistrial after determining that it issued an erroneous evidentiary ruling that disadvantaged Lieberman's case; and (2) whether the District Court erred in denying PDV's post-trial motion (a) because the jury's damages award was not supported by sufficient evidence, (b) because Lieberman's proffered interpretation of the Shareholder Agreement would lead to an absurd result, and (c) because Lieberman suffered no damages. We address each question in turn.

### A.   The Mistrial

PDV challenges the District Court's ruling granting a mistrial. Specifically, PDV asserts that the District Court's concern that its evidentiary ruling "misled" Lieberman was insufficient to support granting a mistrial because Lieberman, through counsel, made the strategic choice not to retain an expert witness. And the District Court's evidentiary ruling had no effect on that choice because Lieberman made this choice long before the District Court ruled on PDV's motion in limine. PDV further argues that granting a mistrial is an abuse of discretion here, because there was an alternative option available. PDV asserts that because the counsel, parties, witnesses, and court were available,

---

[3] This Court has jurisdiction under 28 U.S.C. § 1291. The District Court had jurisdiction under 28 U.S.C. § 1332.

proceeding with the already scheduled trial was a clear and viable alternative to granting a mistrial. Thus, PDV contends that the District Court erred in granting a mistrial.[4]

Trial courts possess significant discretion in deciding whether to grant or deny a request for a new trial. *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990) ("When the granting or denial of a new trial is contested on appeal, substantial deference must generally be given to the decision of the trial judge 'who saw and heard the witnesses and has the feel of the case which no appellate printed transcript can impart.'" (quoting *Cone v. W. Va. Pulp & Paper Co.*, 330 U.S. 212, 216 (1947))). "[W]here a new trial was granted based in part on erroneous evidentiary rulings, the Supreme Court [has] stated that 'the authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court.'" *Bhaya*, 922 F.2d at 187 (quoting *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)).

### 1. Evidentiary Ruling

Following PDV's second objection to Lieberman's testimony regarding the certified accounting statements, the District Court realized that it had not fully appreciated the foundational questions about accounting terms that Lieberman could be asked leading up to his testimony regarding the calculations. The District Court explained that "[w]e would need a translator to translate what the P and L say[s] to lay

---

[4] This Court reviews a District Court's order granting a mistrial for an abuse of discretion. *United States v. McKoy*, 591 F.2d 218, 222–23 (3d Cir. 1979). "An abuse of discretion may occur as a result an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact." *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005).

language." J.A. 229. The District Court then determined that even if Lieberman's initial decision not to retain an expert was wrong, the District Court's evidentiary ruling "misled" Lieberman or, at a minimum, "assisted" in Lieberman's continued decision not to retain an expert.[5]

PDV argues that this basis for declaring a mistrial was wrong because the date to identify experts had passed under the operative scheduling order. While PDV correctly notes that discovery had closed, not all was lost for Lieberman. The District Court ruled on the motion in limine in March 2018. The first trial commenced in November 2019. Had the District Court realized the issue when ruling on the motion in limine, Lieberman could have requested, and the District Court could have granted, leave to amend the scheduling order. After all, there was a year and a half between the District Court's ruling on the motion in limine and the commencement of the first trial. Thus, we are not convinced that the District Court committed reversable error in determining that its evidentiary ruling may have prejudiced Lieberman's ability to present his case.

### 2. Declaration of Mistrial

The District Court's decision to grant a mistrial rested on a prior evidentiary ruling that the District Court determined was erroneous. As this Court has stated, "Particular

---

[5] J.A. 253 ("The problem here is that I think, in fairness, my ruling misled the plaintiff. Now, maybe it misled the plaintiff on something that they should have thought about it [sic] and they were wrong to begin with, but I assisted in that enterprise. Had I not made that ruling, I wouldn't have had any problem saying look, you don't have it, you don't have it, that's the end of it").

deference is appropriate [when] the decision to grant a new trial rest[s] on an evidentiary ruling that was itself entrusted to the trial court's discretion." *Bhaya*, 922 F.2d at 187.

Further, after identifying the issue caused by its prior ruling, the District Court proposed three alternatives:  (1) proceed with the trial, allow Lieberman to testify, and allow PDV to move to strike statements inconsistent with the prior ruling; (2) recess the trial, reopen discovery to allow Lieberman to retain an expert witness, and resume trial with Lieberman's expert the following week; or (3) declare a mistrial, schedule a second trial, and allow Lieberman to obtain an expert in the interim.  In discussing a potential mistrial, the District Court acknowledged that ordinarily, a party cannot change course in the middle of trial.  The District Court recognized, however, that the current situation was "out of the ordinary course" and explained its concerns that the District Court's prior evidentiary ruling may have "misled" Lieberman.  J.A. 253 ("The problem here is that I think, in fairness, my ruling misled the plaintiff.").  The District Court then engaged extensively with both parties about their concerns regarding its proposals.  And although PDV disagreed with all three proposals, that does not negate the District Court's careful consideration of possible alternatives before declaring a mistrial.

Accordingly, we hold that the District Court did not abuse its discretion in declaring a mistrial.

### B.  PDV's Post-Trial Motion

Post-verdict, PDV filed an omnibus motion seeking post-trial relief under Rules 50(b), 59(a), and 59(e) of the Federal Rules of Civil Procedure.[6]  The District Court granted, in part, PDV's request for judgment as a matter of law and subtracted the $695,000 damages awarded for the usage claim.  The District Court denied the remaining requests for relief.

On appeal, PDV argues that the remaining judgment is invalid for three reasons: (1) the jury's award of $1,773,699 for the Rental Income Claim is not supported by the trial evidence; (2) the District Court's interpretation of the Shareholder Agreement would

---

[6]  This Court exercises plenary review over a Rule 50(b) motion.  *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001).  Under Rule 50(b), a court may (1) allow judgment on the verdict, (2) order a new trial, or (3) direct entry of judgment as a matter of law.  *See* Fed. R. Civ. P. 50(b).  A Rule 50(b) motion should not be granted unless "the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief."  *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (quoting *Trabal*, 269 F.3d at 249); *see also ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 268 (3d Cir. 2012).  In considering a Rule 50(b) motion, a court "must disregard all evidence favorable to the moving party that the jury is not required to believe."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000).  Absent such a showing, a court's ruling should stand.

Under Rule 59, a movant may also request a new trial or an amended judgment.  *See* Fed. R. Civ. P. 59(a), (e).  This Court reviews joint or alternative requests for post-trial relief, under Rule 59, for an abuse of discretion.  *See Failla v. City of Passaic*, 146 F.3d 149, 152 (3d Cir. 1998).  Under Rule 59(a), "[t]he decision to grant a new trial is within the sound discretion of the trial court, and such requests are disfavored."  *See Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991).  And under Rule 59(e), a court may alter or amend a judgment only if there is (1) "an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  *See In re Processed Eggs Prods. Antitrust Litig.*, 962 F.3d 719, 729 (3d Cir. 2020) (quoting *Wiest v. Lynch*, 710 F.3d 121, 128 (3d Cir. 2013)).

lead to an absurd result, requiring PDV to default on its mortgage obligation; and (3) Lieberman has failed to show that he will suffer any damages from the alleged breach of the Rental Agreement because, according to the testimony of PDV's corporate representative, Lieberman would be subject to a capital call to cover any award he receives. Each argument fails.

### 1. The Jury Award

PDV argues that there is insufficient evidence to support the jury's award of $1,773,699 in favor of Lieberman. But PDV is wrong. Here, there is sufficient record evidence to support the jury's verdict.

To begin, Lieberman's expert, Scherf, provided three scenarios that offered three different possible damages numbers based on Lieberman's share ownership and PDV's accounting statements. The highest scenario calculated $1,049,219 in damages, which Scherf reached based on documents in the trial record.

As to the remaining $724,480 of the jury award, PDV argues that any calculation of damages should have been limited to deductions for debt service expense, depreciation, and capital expenses from its calculation of net income based on its certified accounting statements. But neither the jury instructions nor the verdict sheet provided any such limitations, and PDV did not object to the proposed jury instructions or verdict sheet. Thus, the jury was free to consider all evidence regarding the calculation of damages and to give that evidence the weight the jury thought it deserved.

During trial, the jury heard from Callan, PDV's Corporate Representative, who testified that PDV made deductions for several "related party" payments that were not

11

enumerated under the Rental Agreement. These were deductions that Lieberman argued should not have been deducted from the gross rental income but were not accounted for in Scherf's damages scenario. And the District Court's jury instructions provided that if the jury found that certain amounts were impermissibly deducted from the net income, it was free to infer that PDV's deduction of some or all of these amounts—including the "related party" payments—was in error.

Furthermore, in attempting to determine whether certain deductions were, in fact, impermissible, a reasonable juror could have conducted a side-by-side comparison of the Rental Agreement and the certified accounting statements to identify which line items fell within the enumerated deductions under the Rental Agreement. In conducting this comparison, a reasonable juror could have, consistent with the jury instructions, included in the net income any deduction from the certified accounting statements that did not fall under an enumerated category listed in the Rental Agreement. After doing this, that same reasonable juror would have found ample evidence to support the damages verdict. Therefore, the record evidence supports the jury's verdict and must not be disturbed. *Am. Bearing Co. v. Litton Indus., Inc.*, 729 F.2d 943, 948 (3d Cir. 1984) ("'The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court,' and will only be disturbed if the district court abused its discretion." (quoting *Allied Chem.*, 449 U.S. at 36)).

Accordingly, we conclude that the District Court did not err.

12

### 2. Contract Interpretation

PDV argues that the District Court erred by refusing to amend the judgment regarding the breach of contract claim. PDV contends that had it performed under the Shareholder Agreement as interpreted by Lieberman, PDV would have defaulted on its mortgage; therefore, the judgment supporting Lieberman's interpretation of the Shareholder Agreement leads to an "absurd and unreasonable" result. We disagree.

At trial, PDV's Corporate Representative, Callan, testified that PDV has "found other solutions to make mortgage payments." J.A. 1348. Callan further testified that if the District Court entered a judgment in favor of Lieberman, PDV would issue a "call for capital" to all shareholders to pay the expenses associated with the judgment. J.A. 1348–49. Based on this testimony, a reasonable juror could find unpersuasive PDV's argument that had it performed under the terms of the Shareholder Agreement, it would have defaulted on its mortgage. Therefore, we conclude that the District Court did not err in denying PDV's requests for relief.

### 3. Rental Income Damages

PDV argues that the District Court also erred in refusing to amend the judgment regarding the Rental Income Claim because Lieberman suffered no damages. According to PDV, uncontroverted evidence showed that if forced to pay the damages for the Rental Income Claim, "PDV would issue a capital call to all . . . shareholders—including [Lieberman]—to cover damages awarded by the jury here. Thus, this would create a zero-sum gain for [Lieberman]." Appellant's Br. 29. But this argument is flawed

13

because it misconstrues Callan's testimony. As articulated above, Callan testified that if the District Court entered judgment in favor of Lieberman, PDV would issue a "call for capital" that would require *all* shareholders to cover the expenses associated with the judgment. So, although Lieberman may be required to cover some *portion* of the judgment, based on Callan's testimony, he would not be required to cover all of it.

Accordingly, we hold that the District Court did not err in denying PDV's requests for relief.[7]

## III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's judgment.

---

[7] For the same reasons discussed herein, we conclude that the District Court did not abuse its discretion in denying PDV's alternative request for a new trial.